606 P.2d 802

**STATE of Arizona, Appellee,**

v.

**Olf Dempsey BARNES, Appellant.**

No. 4593.

Supreme Court of Arizona,
En Banc.

Jan. 11, 1980.
Rehearing Denied Feb. 20, 1980.

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Stanfield, McCarville, Coxon, Cole & Fitzgibbons by David A. Fitzgibbons and Kendra S. McNally, Casa Grande, for appellant.

HAYS, Justice.

Olf Dempsey Barnes appeals from convictions on three counts of assault with a

deadly weapon while armed with a hatchet. Appellant was sentenced to not less than ten years nor more than life on each count, all counts to run concurrently.

We have jurisdiction under Art. VI, § 5(3) of the Arizona Constitution and Rule 47(e)(5), Rules of the Supreme Court.

## FACTS

About 4:00 a. m. on February 22, 1978, appellant's wife, Delois, awoke to find him, a hatchet in hand, emerging from the bedroom of their youngest daughter. When his wife asked what he had done to the family, appellant replied, "I tried to kill them." After ascertaining that the three children had suffered various blows to the head and face, appellant's wife asked him to summon an ambulance and police.

Appellant walked to the police station near his home. As he approached the dispatcher's booth in the outer lobby, the dispatcher and an officer greeted him and asked him how he was doing. Appellant replied, "Not so well." The officer inquired as to the nature of the problem and appellant stated that an ambulance should be dispatched to his home (giving the address) because he had just taken a hatchet to his children. Upon hearing this, the officer opened the door leading from the lobby into an interior hallway and requested appellant to step inside and repeat his problem.

Appellant repeated the statements. The officer then asked appellant to accompany him to appellant's residence. Appellant replied that he would.

Upon arrival at appellant's home, he was allowed to move about freely. He walked down the hallway, looking into various rooms and asking for his rifle and hatchet.

Having ascertained, after a cursory examination, that a crime had been committed, the officer arrested appellant as appellant spotted his rifle and hatchet on a chair and began to move toward them. The officer then informed appellant of the full panoply of *Miranda* rights.

Approximately five minutes had elapsed from the time appellant left the station with the officer until the moment of his arrest.

At the police station, appellant was again instructed as to all his *Miranda* rights. While he was being transported from the station to the hospital, appellant made further incriminating statements. These statements were not in response to questions from police but were spontaneous and interrupted a conversation between an officer and a deputy county attorney.

At a pretrial voluntariness hearing, the court determined that all the statements were admissible, the initial ones because appellant was not in custody, the later ones because appellant made them spontaneously after having twice received complete *Miranda* warnings.

Appellant raises four issues for our consideration:

1. Was it error to admit the incriminating statements into evidence?

2. Did the trial court improperly admit a statement under the "excited utterance" exception?

3. Did the trial judge comment on the evidence?

4. Was appellant given fair warning that he would be subjected to the enhanced penalty provisions of a lesser included offense?

## I.   INCRIMINATING STATEMENTS

Appellant asserts that virtually all his statements are inadmissible as the result of custodial interrogation. We do not agree. It is undisputed that appellant calmly entered the police station and made the most damaging statements in response to a general inquiry when the police had absolutely no reason to suspect that any crime had been committed. Still not under arrest, he voluntarily repeated the statements and accompanied the officer to his (appellant's) residence.

Appellant would have us hold that when he entered the interior hallway of the police station, he was "in custody" and all statements made thereafter should be inad-

missible. In our opinion, appellant was not in custody until he was arrested at his home. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977), made it clear that questioning at a police station does not *per se* necessitate *Miranda* warnings:

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

We find the circumstances of the instant case much less indicative of a "coercive environment" than the situation in *Mathiason, supra.* There, the policeman *knew* that a crime had been committed, suspected Mathiason, and left a note requesting that Mathiason contact him. After a half-hour interview during which Mathiason was informed that his fingerprints had been found at the scene of a burglary (which was untrue), the officer told Mathiason that he was free to go. He was later arrested and charged with the burglary.

In the case *sub judice*, appellant calmly walked into the police station and announced that he had taken a hatchet to his children. Judging simply by appellant's composed appearance, police had no way of knowing whether in fact any crime had been committed. The officer requested—he did not order—appellant to accompany him. Appellant was not handcuffed or restrained in any manner.

At his home, appellant was permitted to move about freely until the officer had seen the children and had satisfied himself that a crime had been committed. Up to this point, we do not think that a reasonable man would have believed that he was deprived of his freedom of action in any significant way. *State v. Hatton*, 116 Ariz. 142, 568 P.2d 1040 (1977).

The remaining statements were made spontaneously after appellant had twice received complete *Miranda* warnings.

Finally, appellant's wife testified to his making the most incriminating statements and testimony by the officers as to those comments was purely cumulative. We find no error.

## II. DID THE TRIAL COURT IMPROPERLY ADMIT A STATEMENT UNDER THE "EXCITED UTTERANCE" EXCEPTION?

Within three minutes after his arrival at appellant's home, the police officer observed that Dickey Barnes, appellant's son, had blood on his head and face. The officer testified that Dickey appeared very sluggish and disoriented.

In response to the officer's question as to what had happened, Dickey stated that his father had struck him several times. At the time of trial, Dickey had no recollection of the occurrence. Appellant argues that the statement does not fall within the purview of an excited utterance because the declarant was not in an "agitated" state and he answered in response to a question, not spontaneously.

We do not agree. The criteria for determining admissibility of a statement as an excited utterance are: 1) a startling event; 2) the words must be spoken soon after the event so as not to give the person time to fabricate; 3) the words spoken must relate to the startling event. *State v. Perry*, 116 Ariz. 40, 567 P.2d 786 (App.1977). Lapse of time is only one factor to be considered. If the totality of the circumstances indicates that the statement was made in a state of shock or his demean-

or and actions had been altered, it is admissible, even though not made immediately after the event. *State v. Ritchey*, 107 Ariz. 552, 490 P.2d 558 (1971).

Neither is a statement necessarily inadmissible because it is made in response to a question. *Ritchey, supra*; *State v. Woolery*, 93 Ariz. 76, 378 P.2d 751 (1963); *State v. McLain*, 74 Ariz. 132, 245 P.2d 278 (1952).

The statement was made approximately twenty minutes after appellant's wife awoke to find him with a hatchet in his hand. The officer testified that Dickey Barnes was covered with blood, disoriented, and had his head in his hands. Considering all the circumstances, we hold that the statement was properly admitted.

### III. DID THE COURT COMMENT ON THE EVIDENCE?

Next, appellant complains that the trial court, by asking questions, helped the state lay the foundation for the introduction of the deadly weapon, the hatchet, and that such questioning constituted a comment on the evidence in violation of Art. 6, § 27 of the Arizona Constitution:

> The Court: I want to ask one question. Explain the procedure. What happens to items like this when they are brought to your property custodian? What happens to them?
> [Witness' response.]
> The Court: What type of security is involved to insure that no one else gets into where these properties are stored?
> [Witness' response.]

We believe that the comments appellant finds objectionable were simply an attempt to clarify the chain of custody procedures used to insure the integrity of evidence submitted to the police for analysis.

In order to comment on the evidence, the court must express an *opinion* as to what the evidence proves. *State v. Skaggs*, 120 Ariz. 467, 586 P.2d 1279 (1978).

Here, the court did nothing more than elicit additional details about police procedures for collecting and preserving evidence. There is not the remotest insinuation as to what the evidence establishes. We find no error.

### IV. SENTENCE

Appellant was convicted under A.R.S. § 13–249(B).* Since he had previously been convicted of aggravated assault, the court sentenced him to the mandatory minimum of ten years pursuant to A.R.S. § 13–1649(A)(1) and a maximum of life, as provided in A.R.S. § 13–249(B).

This sentence, appellant asserts, is unlawful for two reasons: (1) Since the state failed to specify under which subsection of A.R.S. § 13–249 it sought to convict on a lesser included offense, appellant is entitled to the benefit of subsection A of that statute, which carries a maximum penalty of ten years; (2) A.R.S. § 13–1649(A)(1) does not apply to offenses under A.R.S. § 13–249(B) because the latter contains its own special provisions covering repeat offenders.

### A. Failure to Specify Subsection

Initially, from a common-sense point of view, we observe that the state does not seek conviction on any lesser included offense, but on the offense *charged*. Appellant cites no authority for the novel proposition, nor do we choose to adopt such a rule, that the state must specify for the jury and appellant precisely upon which lesser included offense the state expects him to be convicted, assuming he is not found guilty as charged. The purpose of instructions on lesser included offenses is to permit the jury to convict on *whichever* offense it believes the state has proven. It would be impractical and confusing to have the court instruct the jury that if they do not find the defendant guilty as charged, the state expects the jury to return a ver-

---

* All references are to statutes as they existed before the effective date of the new Criminal Code, October 1, 1978.

dict on a specific subsection of a particular statute.

Appellant's reliance on *State v. Garcia*, 114 Ariz. 317, 560 P.2d 1224 (1977), is misplaced because that case involved an *original* charge under A.R.S. § 13–249 which did not specify the particular subsection and, therefore, lent itself to ambiguity. *Garcia, supra*, did not address the issue of lesser included offenses.

Appellant was originally charged pursuant to the language of A.R.S. § 13–248(B) with three separate counts of assault with intent to commit murder while armed with a deadly weapon, to wit, a hatchet. The court instructed the jury that a hatchet was a deadly weapon as a matter of law.

We note that subsection B of the statute under which appellant was charged is identical to subsection B of the statute under which he was convicted, A.R.S. § 13–249(B), the pertinent portions of which follow:

A crime . . . committed by a person armed with a gun or other deadly weapon, is punishable by imprisonment in the state prison, for the first offense, for not less than five years, for a second offense, not less than ten years, for a third or subsequent offense not less than twenty years nor more than life imprisonment.

These identical provisions were added by Laws 1967, Ch. 62, §§ 2 and 3 respectively, and amended at the same time in precisely the same fashion by Laws 1976, Ch. 111, §§ 1 and 2.

The term "gun or other deadly weapon" appears in the pertinent provisions of both statutes. In *State v. Church*, 109 Ariz. 39, 42–43, 504 P.2d 940, 943–44 (1973), we examined the term "deadly weapon" as used in subsection B of A.R.S. § 13–249:

By adding the words "or deadly weapon" after "armed with a gun" in subsection B, we believe the rule of *"ejusdem-generis"* has application here. [citations omitted.] The words *"ejusdem generis"* literally translated means [sic] of the same kind, class or nature. Such rules apply only to persons or things of the same nature, kind or class as preceding specific enu-

merations. [citations omitted.] In applying these principles in construing A.R.S. § 13–249, subsec. B, as amended, we are of the opinion that the legislature intended that one armed with a deadly weapon of the type like a gun (ones that are inherently dangerous), is subject to increased punishment.

■■■ An inherently dangerous weapon is any instrument which, when used in the ordinary manner contemplated by its design and construction, will, or is likely to, cause death or great bodily harm. *State v. Gordon*, 120 Ariz. 172, 176, 584 P.2d 1163, 1167 (1978). Certainly, a hatchet falls within this category and the jury was so instructed.

Considering the verbatim reproduction of the language in section B of both statutes, we would hardly be consistent in holding that the principle of *"ejusdem generis"* applies to the provision in one statute but not to an identical provision in the other statute.

Although subsection A of A.R.S. § 13–249 uses the phrase "deadly weapon," the term there, as we pointed out in *Church* and *Gordon, supra*, refers not to a weapon inherently dangerous according to design and intended use, but to one that becomes dangerous because of the manner in which it is used in a particular instance.

■■■ We conclude, therefore, that from the clear wording of the indictment, the language of the statutes, and previous decisions of this court distinguishing between "deadly weapons" as used in subsection A and *inherently* deadly weapons described in subsection B, appellant had ample notice of the possibility of conviction under subsection B of A.R.S. § 13–249.

**B.** *Applicability of Repeat Offender Statute*

■■■ The final argument advanced by appellant, that A.R.S. § 13–1649(A)(1) does not apply to A.R.S. § 13–249(B), is fatally flawed. The provisions of A.R.S. § 13–249(B), *supra*, set specific minimum penalties for repeat offenders *under that subsec-*

tion, *i. e.*, those previously convicted of assault while armed with an inherently deadly weapon. Appellant, however, was formerly convicted of aggravated assault, a *different* offense.

It follows, then, that the repeat offender provisions of A.R.S. § 13–249(B) are inapplicable, and pertinent portions of the general enhancement statute, A.R.S. § 13–1649(A)(1), come into play:

A person who, having been previously convicted . . . for any offense punishable by imprisonment in the state prison, commits any crime after such conviction, shall be punished upon conviction of such subsequent offense as follows:

If for an offense punishable for a first conviction by imprisonment for a term exceeding five years, by imprisonment in the state prison for not less than ten years.

Since appellant was found guilty of assault with an inherently dangerous weapon and had a prior conviction of aggravated assault, he was properly sentenced to a minimum of ten years under A.R.S. § 13–1649(A)(1) and a maximum of life imprisonment under A.R.S. § 13–249(B) on each count.

Pursuant to the mandate of A.R.S. § 13–4035(B), we have examined the record and find no fundamental error.

The judgment and the sentences are affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.