139 Ariz. 409 (1984)
678 P.2d 1373
STATE of Arizona, Appellee/Cross Appellant,
v.
Margarito Morales RIVERA, Appellant/Cross Appellee.
No. 5953-PR.
Supreme Court of Arizona, En Banc.
February 16, 1984.
Reconsideration Denied April 3, 1984.
*410 Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee/cross-appellant.
Frederic J. Dardis, Pima County Public Defender by Frank P. Leto, Deputy Public Defender, Tucson, for appellant/cross appellee.
FELDMAN, Justice.
Margarito Morales Rivera (appellant) petitions for review of his conviction of a violation of A.R.S. § 13-1410 (child molestation). We granted review to consider the admissibility of a statement by the 3 year old victim, accusing her grandfather (appellant) of having fondled her. The statement was admitted under the hearsay exception for excited or spontaneous utterances. We have jurisdiction under A.R.S. § 12-120.24 and Rule 31.19, Rules of Criminal Procedure, 17 A.R.S.
The facts relevant to the dispositive issue follow:
On August 17, 1981, appellant spent the night in a Tucson motel with his son, his daughter-in-law, and their two daughters, Priscilla, age 5, and Vicky, age 3. Sometime during the night of August 17 or the early morning hours of August 18, appellant allegedly went to the two girls, who were sleeping on the floor, and touched the 3 year old in the "crotch" area. Priscilla was the only witness to this, and she testified later that Vicky's response to the "touching" was to laugh. The parents were not awakened by the incident. Appellant and his son got up the morning of the 18th at 4:30 a.m. Appellant took his son to work around 5:00 a.m., and returned to the motel later in the day.
During the morning of the 18th, the mother received a telephone call from appellant's ex-wife. During that call, which occurred between 10:30 and noon, appellant's ex-wife mentioned that in the past appellant had molested her daughter. Immediately after this call, the mother came into the motel room where Priscilla and Vicky were playing and asked Priscilla whether anybody had ever touched her. Priscilla said no, but Vicky stated: "My Tata touched me right here" (indicating her pubic area). Priscilla then said she had seen her grandfather touch Vicky.
The mother brought the two girls to the hospital later that evening. An examination revealed swelling around the outside of Vicky's vagina and surrounding tissues. The vaginal area did not appear normal for a 3 year old, and was consistent with partial penetration. (It was also consistent with an injury sustained by a fall or through vigorous rubbing.) An examination of Priscilla's vaginal area revealed the same indications of trauma.
At hearings before trial, Vicky was found to be incompetent as a witness, but Priscilla was determined competent to testify. The case was tried before a jury; Priscilla and her mother testified. The trial court admitted Vicky's statement to her mother over defendant's hearsay objection. The jury found appellant guilty of child molestation. The court of appeals affirmed by memorandum decision. We deal today only with the ruling on the admissibility of Vicky's statement to her mother. This was admitted as an excited utterance and affirmed by the court of appeals on the authority of State v. Ritchey, 107 Ariz. 552, 490 P.2d 558 (1971).
Standard of Review
Appellate courts will not reverse the trial court's ruling under the excited utterance exception to the hearsay rule absent a clear abuse of discretion, State v. Dale, 113 Ariz. 212, 216, 550 P.2d 83, 87 (1976). State v. Hughes, 120 Ariz. 120, 123, 584 P.2d 584, 587 (App. 1978). The modern trend is toward a liberal interpretation of this exception, leaving admissibility largely to the discretion of the court. State v. Woolery, 93 Ariz. 76, 84 n. 5, 378 P.2d 751, 757 n. 5 (1963).

The Excited Or Spontaneous Utterance Exception To The Hearsay Rule
Hearsay is defined as a "statement, other than one made by the declarant while *411 testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ariz. Rules of Evidence, 17A A.R.S. The excited or spontaneous utterance exception to the hearsay rules defines such a statement as one "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), Ariz.Rules of Evidence. The exception is premised on the assumption that the excitement of certain startling events stills the reflective faculties. A spontaneous utterance occurring at the time of or under the stress of the "startling event" is therefore thought to be reliable because it is likely to be a "natural" response to the actual sensations and perceptions produced by the preceding external shock. 6 Wigmore, Evidence § 1747 at 195 (Chadbourn rev. 1976).
In reviewing fact situations involving the excited utterance exception, this court has followed the three-part test laid out by Wigmore:
1) There must be a startling event,
2) The words spoken must be spoken soon after the event so as not to give the person speaking the words time to fabricate (or reflect), and
3) The words spoken must relate to the startling event. State v. Barnes, 124 Ariz. 586, 589, 606 P.2d 802, 805 (1980); State v. Ritchey, 107 Ariz. at 555, 490 P.2d at 561, citing Wigmore, supra § 1750.
The time factor is probably the most important of the elements which enter into determination of this exception. McCormick, Evidence § 297 at 706 (2d ed. 1972). Where the statement is made during the exciting event this requirement usually gives courts little difficulty. Id. However, as the time interval increases, spontaneity decreases, the chance for reflection increases and so does the reluctance of courts to find the statement admissible. Id. In the case at bench, the alleged event occurred from five to ten hours before the statement was made. However, this time lapse is not in itself a bar to admission of the statement.
Perhaps an accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process. Testimony that the declarant still appeared `nervous' or `distraught' and that there was a reasonable basis for continuing emotional upset will often suffice.

Id. (footnotes omitted, emphasis supplied).
The guarantee of trustworthiness which serves as the basis of this exception is the stress of the event. Since the length of time such stress will last varies among individuals and with the nature of the events producing the stress, there have been no fixed time limits set to determine whether a statement will qualify as an excited utterance. M. Udall and J. Livermore, Law of Evidence, § 127 at 270-271 (2d ed. 1982). "The physical and emotional condition of the declarant is the important thing." Id. at 270. (Emphasis added). The statements need not be made immediately after the event, nor at the place of the event, and, in the case of children, "where excitement may last longer", courts have extended the time factor requirement. Id.; State v. Ritchey, 107 Ariz. at 556, 490 P.2d at 562. As this court stated in State v. Barnes, supra,
Lapse of time is only one factor to be considered. If the totality of the circumstances indicates that the statement was made in a state of shock or [declarant's] demeanor or actions had been altered, it is admissible, even though not made immediately after the event. State v. Ritchey. ...
124 Ariz. at 589-590, 606 P.2d at 805-806.
In an early decision by this court, we stated that:
[t]he true test in spontaneous exclamations is not when the exclamation was made, but whether under all the circumstances of the particular exclamation the *412 speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue, or whether that nervous excitement had died away so that the remark is elicited by the shock of some other act not at issue, which revives the memory of the act in question.
Keefe v. State of Arizona, 50 Ariz. 293, 298-299, 72 P.2d 425, 427 (1937); see also State v. Yslas, 139 Ariz. 60, 676 P.2d 1118 (1984). The time constraints are also affected by the nature of the offense. Incidents involving rape or other sexual offenses have long been viewed as presenting unique circumstances when the spontaneous utterance exception is sought to be applied. 6 Wigmore, supra, § 1760 at 240. Generally, a less demanding time aspect is required. McCormick, supra § 297 at 709.
With these principles in mind we turn to the case at bench. Here, as in Ritchey, the crime itself is in question. No witnesses exist except the two children, one too young to testify and the other permitted to testify after the court determined she was competent. Also, as in Ritchey, the alleged perpetrator was a person close to children, and the prosecutor sought to admit the statement of a very young victim. Implicit in Ritchey and explicit today is the recognition of necessity. Unfortunately, sexual abuse does occur; when it does it is usually in secrecy. The victim is often reluctant to "tell", and the excited utterance rule is therefore broadened in crimes involving sexual abuse of young children. In recognition of this concept, Ritchey adopts a more lenient test to determine whether evidence meets the "startling event" requirement in such cases. We affirm that test today but define its limits.
Ritchey does not permit us to ignore the hearsay rule in cases of sexual abuse to young children. In Ritchey we found no error in admission of the statement even though there had been a lapse of time, the children were rational, and did not volunteer their information until asked. State v. Ritchey, 107 Ariz. at 556, 490 P.2d at 562. However, the evidence showed that the children, who had been friendly with the defendant and had visited with him several times a week, were in an unusual emotional state when he brought them back from the last visit. The face of the older girl was streaked, as if she had been crying; the children were not rowdy and playful as they usually had been after visiting the defendant, but were withdrawn and quiet. While defendant was in their presence, they did not follow their usual habit of playing near him, but stayed to themselves in a separate room. When they were asked to take their toys and go play, they refused because defendant had given them those toys. It was, in fact, the unusual emotional affect of the children that prompted the question which then produced the accusatory statements. We held that the unusual conduct of the children and the change in their behavior and emotional response were evidence of a continuing emotional upset sufficient to support a finding that the declarant's words were the product of some startling or upsetting event.
In the case at bench, however, there are many crucial differences. Here, the two girls were playing with each other in the usual manner when their mother came into the room to talk to them. There was no evidence that their appearance or behavior was abnormal. Their demeanor had not changed and the record contains no evidence of stress, excitement or upset. Indeed, the question propounded by the mother was not prompted by any unusual behavior, emotional or physical. It was prompted, rather, by a telephone conversation between the mother and the defendant's ex-wife. As far as the record shows, the answer which the young girl gave in response to the question put to her sister was not accompanied by any abnormal reaction.
In short, there is nothing here to establish the existence of a statement made under the influence of a "startling event." To allow this statement in evidence would be to expand the Ritchey rule to the point at which the more relaxed requirements for this hearsay exception in cases involving *413 sexual crimes with young children swallows the hearsay rule in its entirety. So far as the evidence shows, the mother asked the child a question prompted by outside information, and the child responded normally. There was no evidence that the statement was the product of excitement caused by the act in issue. See Keefe v. State, 50 Ariz. at 299-300, 72 P.2d at 427-428; Cf. State v. Yslas, supra. The child's response therefore does not meet the requirements contained in Rule 803(2), supra, for the excited utterance exception. Admitting the response would be tantamount to allowing substantive use of the answer to any question put by the parent of an alleged child victim. Such a result is especially improper here, where the declarant was held incompetent to testify in court. Substantive use of her out-of-court statement cannot be permitted absent the indicia of reliability provided by the hearsay exception.[1] There being no facts to support the trial court's finding that the statement was an "excited utterance", its admission would be an abuse of discretion, unless admission was proper for some other reason.
Non-Substantive Uses: The "Complete Story"
The state claims that even if not admissible as an excited utterance to prove that appellant did fondle the victim, the statement is admissible as non-hearsay to establish something other than the truth of the matter asserted. For example, the state argues that the words Vicky uttered, whether true or not, are admissible to explain the reason Vicky's mother took the girls to the hospital, thus "completing the story" that led to the discovery of the crime.
It is correct that the hearsay rule does not apply when an extrajudicial utterance is not offered as proof of the truth of the matter asserted, 6 Wigmore, supra § 1766 at 250. The hearsay rule is inapplicable where the statements are offered for some valid purpose other than to prove the *414 matter asserted in the statement. However,
Care must be taken with this proposition.... It is easy for an attorney to say `I just want to show that the words were spoken not that they are true.' Before that argument is persuasive it must appear that the utterance of the words, whether or not they are true, is relevant to some issue in the case.
Udall and Livermore, supra § 122 at 236 (emphasis added); see also 6 Wigmore, supra § 1766.
Evidence commentators generally divide the situations where the hearsay rule is inapplicable into four categories. Udall and Livermore, supra § 122.
1) The words sought to be admitted have independent legal significance. The classic examples of this category are utterances of contract, marriage promise, defamation, discharges of legal duty (notice). The utterance in question has no independent legal significance.
2) Words or writings offered to prove the effect on the hearer or reader are admissible where offered to show their effect on one whose conduct is in issue. In the case at bench, neither the mother's conduct, nor Vicky's, are in issue. The reason the mother took her daughter to the hospital is not relevant to the legal issues of the molestation charge.
3) If the statement is used to show knowledge it may be admitted if knowledge is an element of the charge or defense. This, too, is inapplicable to the case at bench. Also, even though knowledge is not an element, non-hearsay proof of knowledge may be used to permit inferences that are relevant. Again, the substance of Vicky's statement to her mother affords no such relevant inference. Cf. Bridges v. State, 247 Wis. 350, 19 N.W.2d 529 (1945), where the child victim's pretrial statements to her mother and police officer gave a precise description of the house where the crime had been committed, thus permitting an inference that she had been in that house. The statement was admitted after the introduction of proof that defendant's house fit the description and that the girl had no other way of having obtained knowledge about the house.
4) Declarations offered as circumstantial evidence of the declarant's feelings or state of mind are admissible where the mental state of the declarant at a particular time is in issue. Vicky's mental state is not an issue in the case at bench.
These categories are not an exhaustive list of non-hearsay uses. However, relevancy is the unifying requisite factor for the admissibility of statements for non-hearsay purposes. The reason given in the case at bench  to complete the prosecution's story showing what prompted the mother to take her daughters to the hospital  is not an appropriate non-hearsay use. The statement in question is a simple assertion of appellant's conduct. It has no relevant use other than to prove the truth of the matter asserted and is therefore hearsay. Since it was not within the argued exception, spontaneous utterance, and is not within any relevant non-hearsay rule, the court erred in admitting it.
The only evidence linking the appellant to the alleged crime, excluding the victim's hearsay statement, was the testimony of her 5 year old sister, Priscilla. Priscilla's testimony was often non-responsive and inconsistent, as might be expected with a witness that age. Therefore, we are unable to find beyond a reasonable doubt that without the improperly admitted hearsay statement the jury would have returned a guilty verdict. State v. Hensley, 137 Ariz. 80, 88, 669 P.2d 58, 66 (1983). We therefore reverse the judgment of conviction and remand for a new trial.
HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.
NOTES
[1] Problems inherent in cases such as this tempt courts, including this one, to stretch the rules of evidence to their utmost. The need to apprehend child molesters, child abusers and similar criminals is recognized and appreciated by this court. The Ritchey rule is a reflection of this. However, we must remember that we are making precedent and also that the rules of evidence were developed as an aid to the truthseeking process; most of the rules which require exclusion of evidence are based upon both common sense principles and historical experience pertaining to reliability. We do not retreat from Ritchey by this decision; the facts in the case at bar simply stretch the rule too far. Compare the recent Wyoming case of Goldade v. Wyoming, 674 P.2d 721 (1984) where under circumstances very similar to the case at bench, a divided court held the statement of the incompetent child victim admissible. However, the court did not accept the evident suggestion that the statement identifying the four year old victim's attacker was a spontaneous utterance, but instead held it admissible under the exception providing that statements "reasonably pertinent to [medical] diagnosis or treatment" are not excluded by the hearsay rule. See Rule 803(4), Wyo.R.Evid. One judge dissented, persuasively arguing that the identification of the assailant was not a statement necessary to diagnosis or treatment but that the statement was admissible as a spontaneous utterance, while another dissented, arguing the statement was admissible under the "catchall exception" as a trustworthy, out-of-court statement. See Rule 803(24), Ariz.R.Evid. 17A A.R.S. The statements in Goldade, however, were made by the victim to the emergency room nurse and treating physician. The majority recognized that statements attributing fault are not usually admissible under the medical diagnosis exception but decided that it had a responsibility to "develop rules which ultimately assist in protecting innocent victims of child abuse" and that "no apology is necessary for the policy of a minimal standard of proof." We do not reach the medical diagnosis exception since it is obviously inapplicable here. We have already recognized the necessity of a liberal interpretation of the rules in cases involving child molesting and would, no doubt, reach a similar result in cases involving child abuse and similar crimes. However, liberal interpretation is one thing and complete abrogation of a rule designed to condition admissibility on some degree of reliability of an extrajudicial statement is another. The state did not argue that the statements improperly admitted as excited utterances fit within any other hearsay exception, nor was the requisite foundation provided for the admission of the statements under any other hearsay exception. We decline to create a new exception based upon our belief in the guilt or innocence of the defendant.