690 P.2d 71
**STATE of Arizona, Appellee,**

v.

**Joseph Paul PEREA, Appellant.**

**No. 6202.**

Supreme Court of Arizona,
In Banc.

Nov. 1, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Justice.

Defendant, Joseph P. Perea, was convicted by a jury on 22 December 1983 of second-degree murder, A.R.S. § 13–1104; kidnapping, A.R.S. § 13–1304; and sexual assault, A.R.S. § 13–1406. Each offense was found to be of a dangerous nature, A.R.S. § 13–604, and the defendant was sentenced for each to life imprisonment without possibility of parole or release for 25 years, A.R.S. § 13–604.01. The kidnapping and sexual assault sentences were to be served concurrently but consecutive to the sentence for murder. We have jurisdiction pursuant to Art. 6, § 5(3) of the Arizona Constitution, and A.R.S. §§ 13–4031 and 13–4035.

Defendant raises six issues on appeal:

1. Did the trial court err in not suppressing statements made by defendant to the police?

2. Was the defendant subjected to an unduly suggestive photographic line-up such that subsequent in-court identifications should have been suppressed?

3. Did the trial court commit reversible error by admitting an allegedly gruesome photograph into evidence?

4. Did the trial court err in overruling defendant's objection to testimony about the defendant "sniffing a substance"?

5. Did the prosecutor improperly comment on defendant's assertion of his right to counsel?

6. Did the trial court err by imposing consecutive sentences?

The facts follow. On 12 August 1983 the defendant and the 12-year-old victim attended a party in East Phoenix. The party lasted from about 9:00 P.M. until 4:00 A.M. and as many as 80 people may have attended. The defendant was observed hugging and kissing the victim and otherwise spending a good deal of time with her at the party. According to witnesses, the defendant and the victim left the party shortly before 4:00 A.M., walking in the direction of a nearby schoolyard.

At 7:35 in the morning, a young boy signaled a passing police car to stop. He then led officers to the schoolyard and the nude body of the victim. An autopsy revealed that the victim died as a result of manual strangulation and that her vagina contained seminal fluid and spermatazoa. She had also suffered a stab wound to the cheek which penetrated into the gum.

A homicide investigation ensued during which several of the guests at the party were interviewed. Because the guests indicated that the defendant was seen with the victim at the party, Detectives Billy F. Butler and Gus Oviedo of the Phoenix Police Department requested, in a phone conversation with the defendant, that he come to the Department later that day to be interviewed. Oviedo testified that he told defendant that he and Butler wished to talk to the defendant to determine if he had been present at the party. Defendant broke the scheduled appointment but came in voluntarily the next day. Defendant was interviewed for approximately one-half hour and then left. Defendant told the officers that he had danced with the victim only once and that he later spoke with her for only a brief time. Defendant stated that he left the party at approximately 1:30 to 2:00 o'clock A.M. on the following morning. He maintained that he left alone and that he proceeded to the home of his friend, Anthony "Porky" Schultz, to sleep. De-

fendant's account differed from information later obtained from other witnesses. Schultz's girlfriend, Karen Salas, for example, stated that the defendant arrived at the Schultz home at 4:30 A.M. Defendant was arrested the following day. After being read his *Miranda* rights, defendant volunteered the location of the clothes that he had worn on the night of the party. Lab tests confirmed the presence of trace amounts of blood on the shirt and pants worn. Furthermore, lab tests conducted on fingernail scrapings and hair found on the decedent showed characteristics similar to those of samples taken from defendant. Defendant appeals from jury verdicts and judgments of guilt as to the crimes charged.

## MOTION TO SUPPRESS STATEMENTS

■ Defendant moved to suppress the statements made to the police officers the day before his arrest. After a hearing on the motion to suppress, the court denied the motion. Defendant claims that he was subjected to custodial interrogation when he was first interviewed by Detectives Butler and Oviedo and that he should have been informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Undeniably, defendant was being interrogated, but *Miranda* warnings are only required when a defendant is subject to *custodial* interrogation. *Id.* Whether a defendant is in custody such that *Miranda* warnings are required to be given is determined by an objective test of whether a reasonable person would feel deprived of his freedom in a significant way. *E.g., Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714, 719 (1977); *Miranda*, supra, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706; *State v. Morse*, 127 Ariz. 25, 28, 617 P.2d 1141, 1144 (1980); *State v. Dickey*, 125 Ariz. 163, 168, 608 P.2d 302, 307 (1980); *State v. Barnes*, 124 Ariz. 586, 589, 606 P.2d 802, 805 (1980). Our Court of Appeals has indicated that the factors indicative of custody are:

1) the site of the interrogation, 2) whether the investigation has focused on the accused, 3) whether the objective indicia of arrest are present, and 4) the length and form of the interrogation.

*State v. Riffle*, 131 Ariz. 65, 67, 638 P.2d 732, 734 (App.1981) (citations omitted). In *Riffle*, supra, the court concluded that because the defendant was only briefly interviewed, the investigation had not yet focused on her, and no handcuffs, drawn guns or search of defendant's person or belongings were used, the defendant was not in custody such that *Miranda* warnings were required. Similarly, the instant case lacks such coercive elements.

■ Defendant in this case, however, emphasizes the fact that he was interviewed at the Phoenix Police Department and that he was identified as the person who had left the party with the victim. We do not believe that these added factors necessitate a finding that the defendant was in custody. In *Barnes*, supra, we stated that:

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

124 Ariz. at 589, 606 P.2d at 805 (quoting *Oregon v. Mathiason*, supra, 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719). *See also State v. Garrison*, 120 Ariz. 255, 585 P.2d 563 (1978). We find no error.

## THE PHOTOGRAPHIC LINEUP

■ Before trial a hearing was held pursuant to *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969). The trial court refused to suppress the in-court identification of the defendant. Defendant contends that he was subjected to an unduly suggestive photographic lineup, which tainted the in-court identification. He claims that the lineup was defective in four regards: (1) he was the only one pictured who had a facial tattoo, (2) his photograph appeared first, (3) his photograph was blurrier than the others, and (4) he was the only person whose photograph appeared who was also present at the party.

a. Tattoo

The defendant has a small tattoo of a cross under his left eye. This tattoo is not perceptible in his photograph. In fact, one person present at the party, Frank Ramirez, told the police that the defendant had a tattoo, but he was unable to pick out the defendant's photograph. From our view of the photograph, the cross is barely visible and would be apparent only to a viewer expressly looking for the tattoo.

In a similar case from California, the distinguishing characteristic was an irregular reddish brown birthmark, smaller than a dime, on defendant's left cheek. A group of black and white photographs were selected for inclusion in a photographic lineup. The other subjects shown generally resembled the defendant except that the defendant's photograph showed a spot on defendant's left cheek which could have been a birthmark. Despite this unique identifying characteristic, the court found that the photographic lineup was not unduly suggestive. *People v. Castellano*, 145 Cal.Rptr. 264, 268, 79 Cal.App.3d 844, 851–52 (1978).

In the instant case, the defendant was pictured in a black and white photograph. His tattoo was small and barely, if at all, perceptible. The tattoo appears to have played little, if any, role in the eyewitnesses' identifications, and we do not believe it was unduly suggestive. We note also that

at least one court has suggested that a unique facial feature makes an identification procedure more reliable. The Court of Special Appeals of Maryland has stated:

> Appellant argues that his mark is unique. Every individual is unique. The mouth, the lips, the teeth, the chin, the cheeks, the nose, the eyes, the forehead, the ears, the hair, or any combination of two or more of those and other features, make every individual unique. They make him different from all others. They are the basis upon which any person is visually distinguished from other persons. The more subtle the distinctions, the more difficult the identification, and the greater the potential for error. If the burglar in this case had not had such a distinctive mark, then Sallie's mark would have cleared him forthwith as a suspect. The fact that the burglar had the mark, and that Sallie had it, and that the mark is unique, made his identification inevitable indeed, but also made it more rather than less reliable.

*Sallie v. State*, 24 Md.App. 468, 472, 332 A.2d 316, 318 (1975). We find no error.

b. First in lineup

Next defendant contends that the photographic lineup was unnecessarily suggestive because the defendant's photograph appeared first. Recently this court was confronted with a similar issue in *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983). The defendant in *Chapple* contended that the photographic lineup used was unduly suggestive because his photograph preceded that of an individual previously identified as the perpetrator. In *Chapple*, we rejected the argument that position alone compels a finding of undue suggestiveness and we do so here.

Law enforcement authorities are required to do no more than to make a random placement of a suspect's photograph. *See State v. Yehling*, 108 Ariz. 323, 325, 498 P.2d 145, 147 (1972) (photographic lineup proper when photographs "are calculated to make it difficult for anyone to point to the defendant's picture for any reason except an honest conviction * * *.") In the

instant case, there is no suggestion that the placement of the defendant's photograph was anything but random. We find no error.

c. Blurry photograph

Defendant next contends that the lineup was unduly suggestive because his photograph was blurrier than the others. We have examined all of the photographs, and we do not believe that defendant's photograph is blurrier than the others. Even if it were, a photographic lineup is not unduly suggestive due to subtle differences in the photographs. *See, e.g., State v. Williams*, 111 Ariz. 175, 526 P.2d 714 (1974); *State v. Jones*, 110 Ariz. 546, 521 P.2d 978, cert. denied, 419 U.S. 1004, 95 S.Ct. 324, 42 L.Ed.2d 280 (1974), overruled on other grounds in *State v. Conn.*, 137 Ariz. 148, 150, 669 P.2d 581 (1983). We find no error.

d. Only photograph of one at the party

Last, defendant argues that the lineup was unduly suggestive because he was the only person whose photograph appeared, who was also present at the party. Defendant has not cited any authority for this proposition, nor have we been able to find any. We do not believe that this factor rendered the lineup unduly suggestive.

We note also that under the "totality of the circumstances" the identification was reliable:

> the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). *See also State v. McCall*, 139 Ariz. 147, 154, 677 P.2d 920, 927 (1984); *State v. Schilleman*, 125 Ariz. 294, 297, 609 P.2d 564, 567 (1980); *State v. Trujillo*, 120 Ariz. 527,

529–30, 587 P.2d 246, 248–49 (1978); *State v. Ware*, 113 Ariz. 340, 343, 554 P.2d 1267, 1270 (1976). One person present at the party, Lani Canita, testified that he had seen the defendant 10 to 15 times prior to the party and that he talked to the defendant for approximately one hour at the party. Another witness, Anthony Cisneros, testified that he passed the defendant and the victim in the street at approximately 3:45 A.M. He stated that the lighting was good and that he passed within two feet. We find no error.

## GRUESOME PHOTOGRAPHS

Defendant claims that the trial court erred in admitting an allegedly gruesome photograph showing bite marks on the victim's neck as well a single stab wound inflicted upon her face.

■ The contested photograph showed the nature and location of injuries, and illustrated the atrociousness of the crime. Gruesome photographs are admissible for such purposes notwithstanding the fact that neither the identity of the victim nor the manner of death are at issue. *See State v. Chatman*, 109 Ariz. 275, 508 P.2d 739, cert. denied, 414 U.S. 1010, 94 S.Ct. 373, 38 L.Ed.2d 247 (1973).

■ In the instant case, the defendant was charged with first-degree murder, sexual assault, and kidnapping. The bite mark was probative on the issue of whether a sexual assault had occurred, and the nature and location of the stab wound went to the issue of premeditation on the first-degree murder charge.

We have examined the photograph and do not believe that it is sufficiently inflammatory to outweigh its probative value. Rule 403, Arizona Rules of Evidence, 17A A.R.S.; *State v. McCall*, supra. We find no error.

## BAD ACT TESTIMONY

■ Defendant charges that the trial court committed error in overruling his objection to testimony that he was observed "sniffing a substance" on the night of the party.

The defendant had claimed that he had only minimal contact with the victim. In questioning Veronica Vasquez, the witness who observed the "sniffing" incident, the following in-court dialogue took place:

Q When this incident occurred, where you felt there was something being sniffed—sniffing of some kind of substance going on, did that [affect] you in any way?

A I was upset.

Q That upset you?

A Yes.

Q "Yes"?

A Yes.

Q Where was this?

Was this outside the individuals were sniffing this substance?

A Okay. It was in the driveway.

Q What kind of lighting was there?

A A dim light from the inside.

Q Are you sure it was the Defendant who was there with Jo Ann [the victim]?

A Yeah. Yes.

Defendant correctly cites *State v. Hines*, 130 Ariz. 68, 633 P.2d 1384 (1981) and *State v. Curiel*, 130 Ariz. 176, 634 P.2d 988 (App. 1981) for the proposition that evidence of other crimes is generally inadmissible to show that "the defendant is a bad person or has a propensity for committing crimes." *Hines*, supra, 130 Ariz. at 73, 633 P.2d at 1389. In the instant case, however, the "sniffing" testimony was elicited for the purpose of showing identity and as such was admissible pursuant to Rule 404(b), Arizona Rules of Evidence, 17A A.R.S., which provides in pertinent part that, "[e]vidence of other crimes, wrongs, or acts * * * may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident." (Emphasis added). *See also State v. Jackson*, 124 Ariz. 202, 603 P.2d 94 (1979); *State v. Padilla*, 122 Ariz. 378, 595

P.2d 170 (1979); *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978).

We believe that questions designed to elicit testimony about a witness' recollection of an upsetting event, her degree of certainty as to an identification, and lighting conditions, were probative of the issue of identity. We find no error.

### COMMENTS ON DEFENDANT'S ASSERTION OF HIS RIGHT TO COUNSEL

■ Defendant asserts that reversible error was committed because the prosecutor commented on defendant's right to counsel. We disagree.

In response to the question "[d]id you make any statements at that time to the Police about anything—about clothing?", asked by the defendant's attorney on direct examination, the defendant began a narration that included the following, "I asked Detective Butler—I wanted a lawyer, Detective Butler had stated to me, he doesn't have to give me a lawyer, because I'm in his custody." Thereafter, in cross-examining the defendant, the prosecutor asked, without objection, the following questions of him:

Q  —you told him you understood your rights?

Q  Then, he told you, he wasn't going to get you an attorney?

Q  After you made the statement that you wanted a lawyer, he didn't have to get you one, because you were in his custody, did Detective Butler continue to interview you?

Q  Right away, you ask for—What? A lawyer?

Q  You asked him—the first thing, first question, "Am I under arrest?"

Q  He read you the rights. And you say, "I want a lawyer," again?

Q  You said you asked him for a lawyer the second time?

Later, in questioning Detective Butler, the prosecutor twice asked the detective if the defendant had asked for an attorney. In his closing arguments, the prosecutor then made the following statements about defendant's request:

The Defendant claims in the second interview that after Detective Butler told him he was under arrest at that time he asked for a lawyer. However, questioning continued and he was read his rights and he made the statement of the correction of the thongs. That's all, no statement about any other clothing and then he asked for a lawyer.

\*     \*     \*     \*     \*     \*

Detective Butler said \* \* \* That the Defendant did not request a lawyer immediately upon being told he was under arrest.

\*     \*     \*     \*     \*     \*

Can you really believe, ladies and gentlemen, all the witnesses who testified in this case on behalf of the State are lying, not truthful, excuse me? Would Detective Butler really tell the Defendant that he's not going to get him a lawyer because he's in Butler's custody?

We do not believe that the prosecutor acted improperly. Defendant's assertion of his right to counsel was initially brought out by his attorney on direct examination in an effort to show that the defendant was denied such right. Once the door was opened the prosecutor was allowed to refute the defendant's testimony. *E.g., State v. Gillies*, 135 Ariz. 500, 510, 662 P.2d 1007, 1017 (1983); *State v. Martinez*, 130 Ariz. 80, 82, 634 P.2d 7, 9 (App.1981). We find no error.

### CONSECUTIVE SENTENCES

■ The last issue raised in the defendant's brief is that the trial court violated A.R.S. § 13–708 because it mandated that the life sentences on the kidnapping and sexual assault charges be served consecutive to the life sentence imposed on the murder charge without setting forth its reasons for doing so. We do not agree.

In sentencing the defendant, the court stated the following on the record:

THE COURT: Mr. Perea, I have considered the severity of these offenses, all the circumstances surrounding this offense. I noted your prior criminal record, your past history of assaultive behavior and that you were on probation at the time of these offenses. I considered the recommendation of the victim's mother and other interested parties. I considered your actions not only in this case, but in prior cases and I considered that protection of the community is warranted and should be reflected in the sentence.

You have shown by your actions you are a danger to society. Of course, I have noted your young age, the aggravating circumstances far outweigh any mitigating circumstances in this case. A.R.S. § 13–708 provides, in part:

If multiple sentences of imprisonment are imposed on a person at the same time * * * [the sentences] imposed by the court shall run concurrently unless the court expressly directs otherwise, in which case the court shall set forth on the record the reason for its sentence.

We believe that the reasons expressed by the trial court comport with those reasons that we have found to be sufficient under A.R.S. § 13–708. *State v. Hallman*, 137 Ariz. 31, 39, 668 P.2d 874, 882 (1983) ("two victims were involved, a separate crime was committed on each victim and society deserved protection from these actions.");

*State v. McGuire*, 131 Ariz. 93, 95, 638 P.2d 1339 (1982) ("the murders were committed in an especially heinous, cruel and depraved manner, that she [the trial judge] considered the defendant to be a dangerous and violent person and ' * * * a grave danger to society * * * '."). Furthermore, that the trial court stated the reasons behind the sentences imposed in connection with its discussion of aggravating circumstances, did not render imposition of consecutive sentences improper. *State v. Lamb*, 142 Ariz. 463, 474, 690 P.2d 764, 775 (1984); *State v. Bishop*, 137 Ariz. 5, 9, 667 P.2d 1331, 1335 (App.1983). We find no error.

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), and have found none.

The convictions, judgments, and sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.