NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PANCHO RAMON DICKSON, *Appellant.*

No. 1 CA-CR 17-0132
FILED 6-5-2018

Appeal from the Superior Court in Maricopa County
No. CR2016-002338-001
The Honorable James R. Rummage, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

---

**P E R K I N S**, Judge:

¶1        Pancho Ramon Dickson appeals his conviction for voyeurism. He argues the trial court erred when it denied a mid-trial motion to suppress a statement made to police, based on *Miranda v. Arizona*, 384 U.S. 436 (1966), and when it permitted the State to present other-act evidence to the jury. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013). On May 6, 2016, Dickson entered Divaz Boutique, a women's clothing store. He walked to the back of the store and began to undress a mannequin wearing a swimsuit. He grabbed the mannequin's breasts, made "ooh" and "aah" sounds, and commented out loud that the mannequin had a "nice rack." During this time, one of the store's employees, "M", was on her break trying on a swimsuit in a dressing room. After undressing the mannequin, Dickson stepped onto a nearby bench and peered into M's dressing room from above. M heard a commotion, peeked outside the dressing room, and saw Dickson standing nearby. Another employee called the police, and law enforcement arrived shortly thereafter.

¶3        Officers Kleppe and Adams escorted Dickson out of the store. They asked him to sit down on the curb outside, in full view of traffic and members of the public. Without reciting *Miranda* warnings, Officer Kleppe asked Dickson some questions about where he lived, then asked him, "What brought you to Tempe?" Dickson responded simply, "Sluts."

¶4        The State charged Dickson with one count of voyeurism for the conduct with M. Dickson filed a motion in limine to preclude, among other things, evidence of his interactions with the mannequin. There is no explicit order in the record denying the motion, but the trial court permitted the State to present the evidence to the jury.

¶5        Before trial, Dickson moved to suppress statements that he argued were taken in violation of *Miranda*. In responding to the motion, the State asserted *Miranda* did not apply to the statement Dickson made on the curb outside the boutique because he was not then in custody, arguing Dickson "could have ended the encounter if he so desired." During the hearing on the motion, Dickson's counsel clarified that he was not moving to suppress the statement made on the curb, because he did not believe he could prove custody. At trial, however, Officer Kleppe testified that after officers asked Dickson to sit on the curb, he was not free to leave. At that point, Dickson objected and requested to approach, and the court held an unrecorded bench conference, presumably regarding a *Miranda* challenge to the statements. After the bench conference, under the State's questioning, the officer testified regarding Dickson's curbside statements.

¶6        The jury found Dickson guilty of voyeurism. The court sentenced Dickson to a mitigated term of three years in prison. Dickson timely appealed.

## DISCUSSION

### I.    *Miranda* **Motion to Suppress**

¶7        To protect a suspect's constitutional right against compelled self-incrimination, law enforcement must recite *Miranda* warnings before interrogating a person in custody. *Miranda*, 384 U.S. at 478–79. A suspect's freedom to leave a police encounter is a necessary factor in determining whether the suspect was in custody for *Miranda* purposes. *State v. Maciel*, 240 Ariz. 46, 49, ¶ 12 (2016) (citing *Howes v. Fields*, 565 U.S. 499, 509 (2012)). The United States Supreme Court defines custody as the "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotations and citation omitted).

¶8        Dickson argues the trial court erred by denying his mid-trial motion to suppress his statement made outside the boutique. The State argues the invited error doctrine applies, precluding appeal.

#### A. The invited error doctrine does not apply.

¶9        The State argues Dickson invited any error by failing to object to the statement in his pretrial motion to suppress and further argues *Miranda* protections do not apply because Dickson was not in custody. The invited error doctrine precludes recourse on appeal when the appealing party's conduct was the source of the error. *State v. Lucero*, 223 Ariz. 129,

138, ¶¶ 30–31 (App. 2009). To determine whether Dickson's conduct was the source of the error, the question we consider is whether he "affirmatively and independently initiated the error." *Id.* at ¶ 31.

¶10      Here, the facts do not show Dickson was the source of the error. Before trial, both parties agreed, and the evidence seemed to indicate, that Dickson was free to terminate the encounter, and therefore could not have been in custody. At trial, however, Officer Kleppe testified that Dickson was *not* free to leave at that time. Dickson then withdrew his concession that he was not in custody and asserted a *Miranda* violation. Nothing in this case indicates that Dickson affirmatively and independently initiated the alleged error. Therefore, the invited error doctrine does not apply.

## B. The trial court did not err in denying the motion to suppress.

¶11      We review the trial court's denial of a motion to suppress for abuse of discretion and its legal conclusions *de novo. State v. Peterson*, 228 Ariz. 405, 407–08, ¶ 6 (App. 2011). Whether a person is in custody for *Miranda* purposes is a mixed question of law and fact, which we review *de novo. Thompson v. Keohane*, 516 U.S. 99, 112–13 (1995).

¶12      Dickson argues Officer Kleppe's testimony that Dickson was not free to leave means he was in custody for *Miranda* purposes. Regardless of whether the officer intended to allow Dickson to leave, custody for *Miranda* purposes is "determined by an objective test of whether a reasonable person would feel deprived of his freedom in a significant way." *Maciel*, 240 Ariz. at 49, ¶ 11 (2016) (quoting *State v. Perea*, 142 Ariz. 352, 354 (1984)). Moreover, "restraint on freedom of movement alone does not establish *Miranda* custody." *Id.* at 49, ¶ 12 (citing *Howes v. Fields*, 565 U.S. 499, 509 (2012)). Instead, to determine custody for *Miranda* purposes, we look at all the circumstances that show "a serious danger of coercion." *Maciel*, 240 Ariz. at 49–50, ¶¶ 12, 14. These circumstances include the site of the questioning, the presence of objective indicia of arrest, and the length and form of the interrogation. *Id.* at ¶¶ 11, 14.

¶13      In this case, the officers questioned Dickson while he was sitting on the curb. He was in full view of all passersby and several people walked by during questioning. Exposure to public view tends to diminish the likelihood of coercion, and this weighs against a finding of custody. *Id.* at ¶ 18.

¶14 There was no evidence that the officers physically restrained Dickson or threatened him with force. Dickson was not in handcuffs. There was no evidence of a prolonged detention or unreasonable delay. *See Maciel* at 51, ¶ 23 (detainment of less than one hour did not, on its own, amount to *Miranda* custody).

¶15 Moreover, even assuming Dickson was in custody, the record does not establish that the officers "interrogated" him. A question posed by an officer can only be considered an interrogation for *Miranda* purposes if, "in the light of all the circumstances, the police should have known that [the] question was reasonably likely to elicit an incriminating response." *State v. Waggoner*, 139 Ariz. 443, 445–46 (App. 1983) (quoting *United States v. Booth*, 669 F.2d 1231, 1238 (9th Cir. 1981)). Here, the officer's questioning ("What brought you to Tempe?") was conversational in nature and not reasonably likely to elicit an incriminating response. Thus, the facts do not establish that there was an interrogation, much less show a danger of coercion.

¶16 Because the circumstances surrounding the questioning do not establish that Dickson was subjected to a custodial interrogation when the officer questioned him, the trial court did not abuse its discretion in allowing the officer to recount Dickson's statement made outside the boutique.

## II. Admissibility of the Mannequin Evidence

¶17 We review the trial court's ruling on a motion *in limine* for abuse of discretion. *State ex rel. Collins v. Superior Court*, 132 Ariz. 180, 182 (1982). Dickson argues his interaction with the mannequin was an irrelevant other act that the trial court should have precluded under Arizona Rule of Evidence 404. For the following reasons, we disagree.

¶18 As relevant here, a person commits voyeurism by "knowingly invad[ing] the privacy of another person without the knowledge of the other person for the purpose of sexual stimulation." Ariz. Rev. Stat. ("A.R.S.") § 13-1424(A). A person's privacy is invaded when she has a reasonable expectation that she will not be viewed, and the defendant views her while she is "in a state of undress or partial dress" or she is viewed in a manner that directly or indirectly "allows the viewing of the person's genitalia, buttock or female breast, whether clothed or unclothed, that is not otherwise visible to the public." A.R.S. § 13-1424(C).

¶19 Evidence of other acts is admissible under Rule 404(b) to prove motive and intent. Dickson's overtly sexual interaction with the

mannequin could be used to show his motive and intent to seek sexual stimulation, which is an element of voyeurism. Dickson's interactions with the mannequin took place immediately before he looked into the dressing room. The sexual nature of his interaction with the mannequin, combined with the temporal and spatial proximity to the location of the charged offense, is indicative of Dickson's intent in looking into the dressing room.

¶20      In addition, Dickson has failed to show how the mannequin evidence was unduly prejudicial under Rule 403. As applied here, relevant evidence may be excluded under Rule 403 only if its probative value is substantially outweighed by a danger of unfair prejudice. Dickson argues he was unfairly prejudiced because without the mannequin evidence, the State would have been left with less evidence to prove the offense. This tautological statement is insufficient to make a showing of unfair prejudice, which results if "evidence has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Mott*, 187 Ariz. 536, 545 (1997). Accordingly, the trial court did not abuse its discretion in admitting the mannequin evidence.

¶21      Finally, Dickson argues the trial court was required to *sua sponte* minimize the prejudice of the mannequin evidence. Because Dickson did not object at trial to the manner of admission, we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). Dickson must show the court committed fundamental error and that this error prejudiced him. *Id.* at ¶ 20. But Dickson has not shown how the court erred. While Dickson argues the court should have sanitized the mannequin evidence testimony, he does not suggest what the court should have done to minimize prejudice. Therefore, we find no fundamental error.

## CONCLUSION

¶22      For the reasons set forth, we affirm Dickson's conviction and resulting sentence.

