NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOHN RICHARD TACQUARD, *Appellant*.

No. 1 CA-CR 13-0916

FILED 6-2-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-133963-001
The Honorable Richard L. Nothwehr, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By William Scott Simon
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Stephen Whelihan
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Judge Donn Kessler joined. Presiding Judge John C. Gemmill concurred in part and dissented in part.

---

**J O N E S**, Judge:

**¶1**      John Tacquard appeals his conviction and sentence for one count of theft of means of transportation. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**      In June 2012, a Phoenix police officer initiated a traffic stop of a 1994 Jeep Cherokee (Jeep) driven by Tacquard, after a record check revealed the Jeep's license plate was stolen. Tacquard was alone in the vehicle, and further investigation revealed the Jeep was also stolen. The vehicle had suffered "extensive damage" — the windshield was cracked, the key tumbler had been removed from the steering column leaving the column's internal electronic wiring exposed, the column itself was cracked, and the radio and speakers and two interior door panels had been removed. Tacquard was arrested and charged with one count of theft of means of transportation.[2]

**¶3**      Tacquard defended the charge, arguing he had no reason to know the Jeep was stolen when he borrowed it from a friend of a friend. Just before opening statements, the State orally moved to preclude any witness other than Tacquard from testifying about his belief regarding the Jeep's legal status. The State argued only Tacquard's state of mind was relevant, but conceded that if "he want[ed] to testify as to what some

---

[1]    We view the evidence in the light most favorable to sustaining Tacquard's conviction. *State v. Butler*, 230 Ariz. 465, 468, ¶ 2 (App. 2012).

[2]    In pertinent part, "[a] person commits theft of means of transportation if, without lawful authority, the person knowingly . . . controls another person's means of transportation knowing or having reason to know that the property is stolen." Ariz. Rev. Stat. (A.R.S.) § 13-1814(A)(5) (2015).

[people] may have told [him about the vehicle]," it may qualify as a hearsay exception.

¶4          In response, defense counsel stated he intended to offer testimony that before taking the Jeep, Tacquard asked D.E., whom Tacquard believed to be the owner, whether the vehicle was "legitimate," to which D.E. responded, "yeah, there's a bill of sale in the glove box." Defense counsel also stated Tacquard's long-time friend, A.M., would testify he saw a bill of sale in the glove box. Defense counsel argued the testimony was being offered to show Tacquard's state of mind at the time he borrowed the Jeep, and the testimony of D.E. and A.M. was relevant to establish the fact that Tacquard was told the car was legitimate, and to corroborate Tacquard's version of events.

¶5          The State argued the bill of sale itself, which was not found during an inventory search of the vehicle or offered into evidence, was a hearsay statement, and, therefore, any testimony regarding its existence should be precluded. The State agreed Tacquard could testify he saw a bill of sale because it "pertain[ed] to his state of mind potentially[,] as long as he didn't get into any hearsay statements," but reiterated that the state of mind or knowledge of others regarding transactions involving the Jeep was irrelevant and hearsay.

¶6          The trial court granted defense counsel permission to argue in his opening statement, if he had a good faith basis for doing so, that Tacquard himself claimed to see the bill of sale, but noted the bill of sale was hearsay and he might be taking a risk in arguing something he may not be able to show during trial. Neither party argued the bill of sale in its opening statement.

¶7          The parties, however, broached the subject to the trial court again the next day. While defense counsel focused upon whether testimony relating to the existence of a bill of sale from witnesses other than Tacquard was hearsay, the court was more concerned about whether other individuals' knowledge was relevant without some indication the information had been provided to Tacquard. At this juncture, the State noted Tacquard could take the stand and say he saw or heard something, which under ordinary circumstances might be hearsay, but here would relate to his state of mind. However, any other person testifying to his or her knowledge of transactions concerning the Jeep, or to the existence of the bill of sale was precluded on relevancy and hearsay grounds. The court reversed its earlier conclusion regarding the bill of sale, finding that testimony that someone saw the document was not necessarily hearsay, but

would not allow any witness, other than Tacquard, to testify to his knowledge of the vehicle without some link showing the testimony was relevant to Tacquard's state of mind.

¶8         Tacquard testified in his own defense.  He explained he borrowed the Jeep from D.E. twenty minutes before being stopped by police.  He testified that before he took the vehicle, he asked D.E., "is everything cool with this vehicle[?]" and D.E. responded, "Yeah, yeah." When Tacquard attempted to testify D.E. also told him a bill of sale was in the glove box, the State objected on hearsay grounds and, after limited discussion, the matter was dropped without having been ruled upon.[3]  A few moments later, in apparent explanation of his earlier testimony, Tacquard said it was the condition of the vehicle that prompted him to ask D.E., "is this vehicle cool[?]  Is everything working?"  Tacquard again attempted to testify as to D.E.'s reference to the bill of sale, but the trial court sustained the State's hearsay objection.

¶9         Tacquard admitted he did not look inside the vehicle before he borrowed it, and although he asserted A.M. looked inside the glove box, Tacquard testified he did not talk to A.M. about anything A.M. may have seen in the glove box.

¶10         A.M. also testified on behalf of Tacquard.  He testified he was in the vehicle when Tacquard initially acquired it and searched the glove box for insurance paperwork.  When he attempted to testify that he saw "a piece of paper with a notary stamp on the bottom," the State objected on hearsay grounds, which the trial court sustained.  Following A.M.'s testimony, the trial court explained, for the record, that although the State objected upon hearsay grounds, it sustained the objection upon general relevancy grounds because Tacquard did not testify to having seen or known any paperwork was in the glove box.

¶11         Following trial, a jury convicted Tacquard as charged.  The trial court found Tacquard had two prior historical felonies, and sentenced

---

[3]      Following the State's objection, the trial court stated, seemingly to Tacquard: "For the moment it was his own statement.  You are only supposed to tell us what" — at which point Tacquard interrupted, stating "Okay."  The State's pending objection was not thereafter ruled upon.  For purposes of this appeal, the parties consider the court's treatment of the matter as indicating the State's objection was sustained.

him to the presumptive prison term of 11.75 years. Tacquard timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1),[4] -2101(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶12**　　　Tacquard argues the trial court abused its discretion by: (1) precluding Tacquard from testifying D.E. told him a bill of sale was in the Jeep's glove box;[5] and (2) precluding A.M.'s testimony that he saw a piece of paper containing a notary stamp in the Jeep's glove box. We review evidentiary rulings for an abuse of discretion. *State v. Garza*, 216 Ariz. 56, 66, ¶ 37 (2007) (citing *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006)).

## I.　　Tacquard's Testimony

**¶13**　　　Tacquard argues the trial court should have allowed him to testify to having been told by D.E. a bill of sale was in the glove box. Specifically, he argues the statements were not hearsay because they were not offered to prove the truth of the matter asserted — i.e., that there *was* a bill of sale in the glove box — but rather to explain Tacquard's state of mind, and purported belief that his friend rightfully possessed the Jeep, at the time Tacquard took possession.

**¶14**　　　Hearsay is a "'statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *State v. Rivera*, 139 Ariz. 409, 410-11 (1984) (quoting Ariz. R. Evid. 801(c)). "Words offered to prove the effect on the hearer" are not hearsay, and "are admissible when they are offered to show their effect on one whose conduct is at issue." *State v. Hernandez*, 170 Ariz. 301, 306 (App. 1991) (citing *Rivera*, 139 Ariz. at 409, 414).

---

[4]　　　Absent material revisions from the relevant date, we cite a statute's current version.

[5]　　　Tacquard also argues the trial court erred in precluding him from testifying that he asked D.E. whether the vehicle was legitimate, and D.E. responded in the affirmative. However, the record reflects Tacquard testified as to this exchange on two separate occasions. *See supra* ¶ 8. Although the State's hearsay objections were sustained, the testimony was not stricken and remains a part of the record upon which the jury's verdict was rendered. We therefore need not address this contention.

¶15       Here, D.E.'s statements were not offered as proof of the matter asserted: that D.E. possessed legal title to the Jeep, or that a bill of sale was actually in the glove box. Indeed, Tacquard did not dispute the Jeep was stolen. Rather, D.E.'s statements were offered to explain why Tacquard believed it was all right for him to take possession of the vehicle. Therefore, the offered testimony was not hearsay and was admissible for the limited purpose of demonstrating Tacquard's state of mind. *State v. Schmid*, 109 Ariz. 349, 355 (1973) (finding statements introduced to demonstrate their effect on the hearer, and not to prove the truth of the words offered, are admissible to show a defendant's state of mind).

¶16       Having concluded exclusion of the statements was error, we turn to whether that error was harmless. *See State v. Ellison*, 213 Ariz. 116, 131, ¶ 51 (2006); *State v. Alvarez*, 228 Ariz. 579, 581, ¶ 8 (App. 2012). Under harmless error review, we will affirm a conviction "if the state, 'in light of all the evidence,' can establish beyond a reasonable doubt the error did not contribute to or affect the verdict." *State v. Valverde*, 220 Ariz. 582, 585, ¶ 11 (2009) (quoting *State v. Bible*, 175 Ariz. 549, 588 (1993)). The relevant inquiry is "'whether the guilty verdict actually rendered in this trial was surely unattributable to the error.'" *Id.* (quoting *State v. Anthony*, 218 Ariz. 439, 446, ¶ 39 (2008)).

¶17       The record reflects Tacquard had ample reason to know the Jeep was stolen, and the exclusion of his testimony regarding the bill of sale did not affect the verdict. The arresting officer testified that, in response to his questioning as to whether Tacquard knew the Jeep was stolen, Tacquard stated "he didn't care as long as it got him from point A to point B." Moreover, the officer testified Tacquard admitted having started the vehicle with a "screwdriver type tool," which the officer explained is commonly the case with stolen vehicles. Officers located two screwdrivers and two pairs of needle-nose pliers in the vehicle; a key was never located.[6] Another officer testified that the type of damage the interior of the Jeep had suffered — specifically, the forcibly removed key tumbler and cracked steering column — was commonly found in stolen vehicles. The condition of the Jeep alone apparently caused Tacquard sufficient concern to prompt him to

---

[6]       Tacquard testified he only received a "broken piece of a key" from D.E. that did not have "teeth and grooves" on it, but was just the "tab" of the key.

ask whether the vehicle was "legitimate,"[7] even before he proceeded to start the vehicle with a screwdriver. Furthermore, Tacquard testified he was aware both D.E. and A.M. had histories of involvement with law enforcement.

¶18 Although Tacquard's testimony was relevant in determining whether he knew the vehicle was stolen, it could not overcome or explain away the myriad of other circumstances that provided him reason to know the Jeep was stolen. And, Tacquard was apparently prepared to testify only that D.E. told him a bill of sale was in the glove box — not that the bill of sale applied to the Jeep or was issued to D.E. Because we can say beyond any reasonable doubt that the error did not contribute to the verdict, we find the exclusion of Tacquard's testimony was harmless.

## II. A.M.'s Testimony

¶19 Next, Tacquard argues the trial court abused its discretion by precluding A.M. from testifying to having seen a bill of sale in the glove box of the Jeep on relevancy grounds. "[W]e review the trial court's determination of the relevancy and admissibility of evidence for abuse of discretion." *State v. Rutledge*, 205 Ariz. 7, 10, ¶ 15 (2003) (citing *State v. Amaya-Ruiz*, 166 Ariz. 152, 167 (1990)). A court abuses its discretion when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Mieg*, 225 Ariz. 445, 447, ¶ 9 (App. 2010) (internal quotation and citation omitted).

¶20 Under Arizona Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Tacquard argues testimony from A.M., that A.M. had seen a bill of sale in the glove box, tended to make it more probable that D.E. actually told Tacquard the bill of sale was in the glove box. But as the trial court ruled, what A.M. saw had no relevance to the charge in the case: whether Tacquard knew or had reason to know the Jeep was stolen.

¶21 The only fact of consequence here is whether Tacquard drove the vehicle with a legitimate belief that D.E. was its rightful owner.

---

[7] The record is unclear as to whether Tacquard was inquiring as to the mechanical operability, or the legal status, of the Jeep. Viewing the facts in the light most favorable to sustaining the conviction, this testimony supports the inference that Tacquard was aware, simply from the physical appearance of the Jeep, that it was not, in fact, legit.

Tacquard testified that while he saw A.M. check the glove box, he did not have any conversations with A.M. about what may have been located there. Nor did he look in the glove box himself to confirm D.E.'s statements or direct A.M. to do so. Because A.M.'s observations were never relayed to Tacquard, they could not have bolstered Tacquard's reliance on D.E.'s statements, or impacted his state of mind as to that issue. Moreover, according to A.M., he was not acting to confirm D.E.'s statements or under Tacquard's direction, but just happened to notice a bill of sale while looking in the glove box for another purpose. With no nexus between what A.M. saw and Tacquard's knowledge, the testimony is of A.M. is irrelevant.

¶22 Therefore, the trial court did not abuse it discretion in excluding A.M.'s testimony regarding his observation of the bill of sale in the glove box as irrelevant.

**CONCLUSION**

¶23 For the foregoing reasons, we affirm Tacquard's conviction and sentence.

**G E M M I L L**, Judge, concurring in part and dissenting in part,

¶24 I respectfully dissent because I disagree with the majority's harmless error analysis of the exclusion of Tacquard's testimony of what D.E. said to him about a bill of sale for the vehicle. I agree with the majority's resolution of the issue regarding A.M.'s testimony.

¶25 The majority correctly concludes that the trial court erred in sustaining the State's objection when Tacquard attempted to testify that D.E. had told him the Jeep was legitimate and there was a bill of sale in the glove box. *See supra* ¶¶ 4, 8, 15. This evidence was not hearsay because it was offered as evidence of Tacquard's state of mind. Because Tacquard's defense was that he neither knew nor had reason to know that the Jeep was stolen, the evidence was crucial. The majority errs, I respectfully submit, by deciding the erroneous exclusion of this evidence was harmless beyond a reasonable doubt.

¶26 Although there is ample evidence supporting the jury's determination of guilt, this wrongly excluded evidence went to the heart of Tacquard's defense: that he did not knowingly control another person's means of transportation. When the evidence of guilt is overwhelming and the erroneously excluded or admitted evidence does not affect the central

issue determining guilt, it is easier to conclude that harmless error has occurred. In this instance, however, the excluded evidence was the primary component of Tacquard's defense, and I cannot say beyond a reasonable doubt that this error did not contribute to or affect the jury's verdict.

¶27 It is difficult for an appellate court to assess the weight, credibility, and potential significance of excluded evidence. If Tacquard had been allowed to explain what D.E. had told him, the jury may have chosen to believe him and reached a different result. That we may assess an acquittal to be unlikely does not automatically mean that the error was harmless. As the United States Supreme Court has explained:

> From presuming too often all errors to be "prejudicial," the judicial pendulum need not swing to presuming all errors to be "harmless" if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty. In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however[] justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be.

*Bollenbach v. United States*, 326 U.S. 607, 615 (1946).

¶28 Because I cannot conclude that the error was harmless beyond a reasonable doubt, I would reverse and remand for a new trial.



Ruth A. Willingham · Clerk of the Court
FILED: ama

9