IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

THE STATE OF ARIZONA,
*Appellee*,

*v.*

JUSTIN ALEXANDER COPELAND,
*Appellant*.

No. 2 CA-CR 2019-0229
Filed April 1, 2022

_____

Appeal from the Superior Court in Cochise County
No. CR201800252
The Honorable Wallace R. Hoggatt, Judge
The Honorable Laura Cardinal, Judge

**VACATED AND REMANDED**

_____

COUNSEL

Mark Brnovich, Arizona Attorney General
Linley Wilson, Deputy Solicitor General/Section Chief of Criminal Appeals
By Kathryn A. Damstra, Assistant Attorney General, Tucson
*Counsel for Appellee*

Cochise County Office of the Legal Advocate
By Xochitl Orozco, Legal Advocate, Bisbee
*Counsel for Appellant*

## OPINION

Presiding Judge Espinosa authored the opinion of the Court, in which Vice Chief Judge Staring and Judge Eckerstrom concurred.

E S P I N O S A, Presiding Judge:

**¶1**        Justin Copeland appeals from his convictions and sentences for fifty counts of child molestation, challenging the trial court's denial of his motion to dismiss the indictment for lack of specificity and certain of its evidentiary rulings.  Copeland further contends there was fundamental error due to prosecutorial misconduct and because the court imposed multiple assessments at sentencing.  Although we conclude under the circumstances of this case, involving a young victim and an alleged resident child molester,[1] that the indictment was sufficient for purposes of due process, because we cannot say the verdicts were not influenced by inadmissible hearsay evidence, we vacate the convictions and resulting sentences and remand to the trial court for a new trial or further proceedings consistent with this opinion.

### Factual and Procedural Background

**¶2**        We view the evidence in the light most favorable to upholding the jury's verdicts, resolving all reasonable inferences against Copeland.  *See State v. Gill*, 248 Ariz. 274, ¶ 2 (App. 2020).  When R.H. was four years old, her mother married Copeland.  At some point, he began touching R.H.'s "private parts" over her clothing "once a week or more" while her mother was busy.  In June 2016, when R.H. was eleven, the family moved to Sierra Vista.  Copeland continued to touch R.H. over and sometimes under her clothing—"mostly in the hallway" in an area not readily visible, and sometimes in Copeland's or R.H.'s bedroom.  R.H. recounted this had happened numerous times while they lived in Sierra Vista.  Copeland had instructed R.H. not to tell anyone and on some

---

[1]Resident child molesters have been defined as "defendants who have regular access to and control over children whom they sexually abuse in secrecy for long periods of time."  *State v. Lente*, 453 P.3d 416, ¶ 1 (N.M. 2019).

occasions told her to stop him if she was uncomfortable with what he was doing.

¶3 In September 2017, Copeland and R.H.'s mother separated, and she and R.H. moved away. In November, R.H.'s physical education (PE) teacher noticed she was "not her usual self." When she broached the subject, R.H. started crying and then said that her stepfather "had touched her in the wrong way," more than once, gesturing towards her breasts and genitals. R.H. was taken to the school counselor's office where she told the counselor that her stepfather "had been touching her" in "[t]he way a man shows that he loves a woman." The counselor reported R.H.'s statements to police.

¶4 Later that day, a forensic interviewer spoke with R.H., observed by the lead detective assigned to the case. The following day, Copeland sent a friend a photograph of himself with a gun to his head and told her "he wanted to end it all" and "didn't want to go to jail or prison." When his friend asked why he would go to prison, Copeland responded that he had been "f- - - ing around with" R.H. Copeland's friend later elaborated that, from the context of the conversation, she understood it to mean Copeland had engaged in conduct of a sexual nature with R.H. The friend contacted R.H.'s mother who telephoned the police. When officers went to Copeland's house, he was upset and intoxicated. Copeland repeatedly told them "he was going to go to jail" because he had been accused of assaulting his stepdaughter. In the course of the conversation with one officer, Copeland kept "going back and forth," saying that he "might be a sex offender" and it "might have been sexual" but also denying that he could behave in such a way.

¶5 Copeland was taken to the hospital, where he confided in another friend that when he was drinking, he would sometimes "wake up on top of" R.H. He also told his friend that "whenever he was drinking" he "touched [R.H.]," which his friend testified he understood to mean that Copeland had "repeatedly" touched R.H. "[i]nappropriate[ly]," "in places you shouldn't touch a child."

¶6 Copeland was charged with fifty counts of child molestation occurring in 2016 and 2017 and one count of continuous sexual abuse, charged in the alternative. On the state's motion, the trial court dismissed the continuous sexual abuse count with prejudice, and the jury found Copeland guilty of the remaining fifty charges. The court subsequently sentenced him to a combination of consecutive and concurrent sentences totaling thirty-four years' imprisonment and imposed a Dangerous Crimes

Against Children Assessment of $500 per offense, for a total of $25,000. We have jurisdiction over Copeland's appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**Motion to Dismiss Indictment**

**¶7**        As noted above, the indictment charged Copeland with fifty counts of molestation of a child and one count of continuous sexual abuse of a child.[2] Count one stated,

> On or between June, 2016 and December, 2017 Justin Alexander Copeland intentionally or knowingly engaged in sexual contact with a person who was under fifteen years of age, to wit: R.H., the first time, in violation of A.R.S. §§ 13-1410(A)(B), 13-1401, 13-105, 13-701, 13-702, 13-703, 13-705(D), and 13-801, a class 2 felony.

The remaining forty-nine molestation counts were worded the same, except each specified an increasing numerical designation from "the second time" to "the fiftieth time." Before trial, Copeland moved to dismiss the indictment, arguing it was duplicitous because each count may have charged more than one act based on R.H.'s statement that she had been abused an average of twice per week over a period of seventy-eight weeks.[3] He also asserted the indictment's "imprecision" put him "in the untenable position of having to defend against some unknown act on some unknown date" because it failed to describe the specific acts and dates of the alleged offenses. The trial court denied Copeland's motion, stating, "Arizona law doesn't recognize a motion for a bill of particulars." Copeland maintains the court erred because the Sixth Amendment and Rule 13.1(a), Ariz. R.

---

[2]The trial court granted the state's motion to amend the continuous sexual abuse charge as an alternative to the fifty molestation charges, following Copeland's first motion to dismiss.

[3]Copeland has not meaningfully raised this argument on appeal, merely referring to the duplicity holding of *Spencer v. Coconino County*, 136 Ariz. 608 (1988). Any argument as to duplicity is therefore waived. *See State v. Vargas*, 249 Ariz. 186, ¶ 22 (2020) (when appellant fails to properly develop argument, court may consider it abandoned and waived).

Crim. P., entitled him to "more notice and specificity" of the charges. And he additionally urges, for the first time on appeal, that the state was restricted to prosecuting him only for continuous sexual abuse of a child. We will not disturb a court's ruling on a motion to dismiss an indictment absent an abuse of discretion. *State v. Ramsey*, 211 Ariz. 529, ¶ 5 (App. 2005). "An error of law constitutes an abuse of discretion." *State v. Maciel*, 240 Ariz. 46, ¶ 9 (2016).

**Notice of Charges**

**¶8**　　　　The Sixth Amendment provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. Rule 13.1(a), Ariz. R. Crim. P., defines an indictment as "a plain, concise statement of the facts sufficiently definite to inform the defendant of a charged offense." "An indictment is legally sufficient if it informs the defendant of the essential elements of the charge, is definite enough to permit the defendant to prepare a defense against the charge, and affords the defendant protection from subsequent prosecution for the same offense." *State v. Far W. Water & Sewer Inc.*, 224 Ariz. 173, ¶ 36 (App. 2010). In determining sufficiency, "the indictment 'must be read in the light of the facts known by both parties.'" *Id.* (quoting *State v. Magana*, 178 Ariz. 416, 418 (App. 1994)).

**¶9**　　　　Our research has revealed no Arizona precedent specifically addressing the sufficiency of an indictment in which a resident child molester was charged with multiple counts of child molestation in the manner presented here. But in an unpublished decision, we reviewed a similar situation in which the appellant had been charged with, and convicted of, numerous counts of child molestation and sexual conduct with a minor, including counts that nonspecifically alleged the "first" and "last" times various types of abuse had occurred. *State v. Brown*, No. 2 CA-CR 2018-0207, ¶¶ 8, 10, 15-18 (Ariz. App. Sept. 23, 2019) (mem. decision).[4] The appellant argued, *inter alia*, that the indictment had not provided sufficient notice of the allegations against him, due to the vagueness of the victim's testimony and "because she did not remember with particularity more than one incident and could only testify that they had occurred 'more

---

[4]We cite this memorandum decision, issued after January 1, 2015, only for its persuasive value in the absence of specific, on-point authority for this issue and to aid our determination whether to publish this opinion. *See* Ariz. R. Sup. Ct. 111(c)(1)(B),(C).

than once'" during an approximate eight-month period at a particular residence. *Id.* ¶¶ 2-4, 14, 17, 20. We rejected that argument, concluding that the appellant's challenge actually invoked the sufficiency of the evidence rather than the adequacy of the indictment, *id.* ¶ 14, and that the victim's testimony that each type of act had occurred multiple times was sufficient to permit the jury to find that the challenged acts had been committed as charged, *id.* ¶ 20.

¶10        Considering decisions from other jurisdictions for this issue of first impression, we note that California's and New Mexico's highest courts have dealt with similar claims involving multiple counts of residential child molestation and resolved them with reasoning similar to that in our decision in *Brown*, though with more explication that may provide guidance here. In *People v. Jones*, a teacher was convicted of sexual offenses against four young children, two of whom he had adopted. 792 P.2d 643, 645-46 (Cal. 1990). Because the victims were young and had been abused numerous times, much of their testimony was nonspecific as they were unable to provide dates and precise locations of the offenses. *Id.* at 646-47. The California Supreme Court held that prosecuting alleged resident child molesters based on nonspecific charges and "generic testimony" does not violate a defendant's due process rights to notice, to prepare a defense, or to a unanimous jury. It so concluded because the elements of the offenses did not include specific acts and locations, grand jury and pretrial discovery procedures informed the defendant of the allegations, and trials on such charges generally turned on the credibility of victims. *Id.* at 657-59. The court reasoned that "even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." *Id.* at 654.

¶11        As we did in *Brown*, the *Jones* court looked to the sufficiency of the evidence and concluded that an alleged victim's nonspecific testimony satisfied due process so long as the victim could describe the kind of acts committed, the number of acts committed "(e.g., 'twice a month' or 'every time we went camping')," and the general time frame "to assure the acts were committed within the applicable limitation period." *Id.* at 654-56. The court noted that "[a]dditional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." *Id.* at 656; *cf. State v. Berry*, 101 Ariz. 310, 314 (1966) (molestation victim's inability to recall details like date and time goes to credibility, an issue for the jury, and such testimony insufficient grounds

for fatal variance between information and bill of particulars and trial evidence), *superseded by statute*, 1983 Ariz. Sess. Laws, ch. 202, § 10, *as recognized in State v. Holle*, 240 Ariz. 300, ¶ 28 (2016). To hold otherwise "could effectively insulate the most egregious child molesters from prosecution." *Jones*, 792 P.2d at 651 (quoting *People v. Van Hoek*, 246 Cal. Rptr. 352, 354 (Ct. App. 1988)). The court thus struck a balance to accommodate "all legitimate due process concerns" without immunizing resident child molesters "merely because [they have] repeatedly molested [their] victim[s] over an extended period of time." *Id.* at 645, 648, 654.

**¶12**        In *State v. Lente*, the defendant was convicted of twenty-six sexual offenses perpetrated against a child who had lived with him, after the child testified about nearly continuous sex abuse for years. 453 P.3d 416, ¶¶ 5-6, 19 (N.M. 2019). The defendant's trial strategy was to show he had lacked access to the victim on certain occasions, emphasize inconsistencies in her allegations, and discredit her testimony by suggesting she had a motive to fabricate the accusations. *Id.* ¶¶ 5, 18. In a habeas corpus proceeding, it was successfully argued that the vague allegations in the indictment had failed to provide adequate notice of the charges and potentially subjected the defendant to double jeopardy. *Id.* ¶¶ 10-12. The New Mexico Supreme Court, in a comprehensive, wide-ranging opinion, rejected those arguments and reversed. *Lente*, 453 P.3d 416. Regarding sufficiency of notice, the court stated there was "nothing to suggest that Lente was unsure of the charges he faced or was somehow precluded from defending himself." *Id.* ¶ 20. And it determined that charging documents in resident child molester cases only required some form of "minimal differentiation between criminal counts." *Id.* ¶ 43 (quoting *Valentine v. Konteh*, 395 F.3d 626, 636-37 (6th Cir. 2005)). That differentiation could be satisfied "by the provision of 'time ranges or certain locations or certain actions.'" *Id.* (quoting *Valentine*, 395 F.3d at 637). The court explained:

> [C]harging documents in resident child molester cases have unique significance. They must channel the jury's focus and require it to determine if specific instances of illegal conduct were established. A charging document achieves this end by specifying the exact sex-abuse crimes that allegedly occurred and identifying the dates or date ranges when those crimes purportedly happened. Such charges do indeed ask the jury to decide if specific, illegal sex acts took place. This point is particularly

> evident where the evidence elicited indicates that repeated molestations exceeding the number of specific acts charged were perpetrated, a likely occurrence in resident child molester cases.

*Id.* ¶ 71 (citation omitted).

¶13 In similarly striking a balance between due process and immunizing residential child molestation, we conclude the indictment here was legally sufficient to provide Copeland with adequate notice of the charges against him. It tracked the language of the molestation statute, § 13-1410, identified the victim, asserted the offenses had occurred in Cochise County, and provided a time frame for the offenses. *See State v. Self*, 135 Ariz. 374, 380 (App. 1983) (indictment that tracks statutory language generally provides sufficient notice). The state was not required to provide notice of the specific acts giving rise to the charges or the manner in which the offenses would be proven. *See State v. Arnett*, 158 Ariz. 15, 18 (1988). Moreover, the date of the offense is not an element of molestation of a child. *See* § 13-1410; *cf. State v. Jones*, 188 Ariz. 534, 543 (App. 1996) (date of offense not element of sexual assault), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239 (2012); *Jones*, 792 P.2d at 655, 657 (specific date, time, place, or circumstances not elements of molestation and prosecution utilizing generic testimony does not, of itself, violate due process because sufficient notice generally provided by pretrial disclosure, including preliminary hearing or grand jury transcripts). And the disclosed grand jury transcript in this case informed Copeland of the nature of the allegations, including where and approximately when the offenses were said to have occurred. *See Far W. Water & Sewer Inc.*, 224 Ariz. 173, ¶ 36 (indictment read in light of facts known by both parties).

¶14 Copeland maintains the lack of specificity in the indictment limited his ability to defend himself and he was subjected to "trial by ambush." However, he has not shown or argued he was unaware of or surprised by the continuously recurring conduct alleged. *Cf. State v. Sirisun*, 279 N.W.2d 484, 487 (Wis. Ct. App. 1979) (reversing dismissal based on child's nonspecific testimony at preliminary hearing where no claim or indication defendant was misled or prejudiced and charged offense within statute of limitations (quoting *Tapp v. State*, 269 N.E.2d 367, 369 (Ind. 1971))). And, other than the possibility that he could have presented an alibi defense for times he may have been out of town, Copeland does not specify what

defenses were unavailable to him.[5]  *See State v. Hamilton*, 177 Ariz. 403, 410 n.6 (App. 1993) (assertion that defendant was unable to present alibi defense, "because he could not reconstruct his life for a specific year, is a theoretical, not an actual, prejudice that could be asserted any time an offense was alleged to have occurred over a period of time"); *see also State v. Rankin*, 181 N.W.2d 169, 171-73 (Iowa 1970) (no deprivation of alibi defense although date of offense not specified or proved, defendant complained he could not account for all his time during month-long period in which incest was charged, defendant had access to child, he did not proffer an alibi at trial, and defense was denial it happened and child's alleged animosity).

¶15        Nor has Copeland meaningfully explained how he would have defended differently had the indictment and R.H. been more specific. *See Commonwealth v. Kirkpatrick*, 668 N.E.2d 790, 794 (Mass. 1996) (rejecting defendant's claim of inability to prepare defense where no showing defense would have been different had victim been more precise about dates and times of sexual assaults).  Although, as noted above, he contends he was prevented from asserting an alibi defense, he has not shown that such a defense was available.  Furthermore, the indictment did not, as he claims, force him to limit his trial defenses only to "it could not have happened." Indeed, Copeland challenged R.H.'s credibility, arguing she had a motive to fabricate the allegations, he highlighted discrepancies between her testimony and that of other witnesses, particularly as demonstrating his lack of opportunity to commit the offenses, and pointed out logistical and arguably improbable implications of R.H.'s allegations.  Accordingly, for all the above reasons we conclude that due process does not require that an indictment precisely delineate numerous molestations when those acts are

---

[5] Copeland complains that during her forensic interview, R.H. related an incident of molestation during a Super Bowl party, which he "spent time addressing" with R.H.'s mother as part of his trial preparation, but R.H. did not remember the particular incident at trial.  He points to this as an example of how he was deprived of the ability to defend against the charges.  He fails to explain, however, how he would have defended any differently than his denials of the other recurring incidents R.H. testified to and attacking her credibility.  We note that by the time of trial, over two years had elapsed since the reported Super Bowl incident, R.H. testified about being molested during and after a weekend party where the adults were drinking alcohol, and the jury could have reasonably concluded she forgot that it was the Super Bowl.  We are not persuaded that Copeland suffered any prejudice.

alleged to have been committed against a child victim and to have happened repeatedly over a substantial period of time with little or no basis for the child to make any such differentiation.

**Double Jeopardy**

¶16        Copeland also asserts the indictment's claimed deficiencies could subject him to double jeopardy "if the state were to charge another [fifty] counts in that time frame because, other than the time frame and the number, there is nothing to nail down when any of these events occurred." Although at oral argument, the state generally conceded that double jeopardy would preclude it from charging Copeland with any additional counts for molesting R.H. during the same period of time, neither we nor a future court are bound by the state's concession on a matter of law. *See State v. Solis*, 236 Ariz. 242, ¶ 23 (App. 2014).

¶17        Considering a similar double jeopardy argument in *Lente*, the New Mexico Supreme Court first observed that once it is determined an indictment provides sufficient notice, "double jeopardy concerns . . . have marginal significance in practice." 453 P.3d 416, ¶ 35. The court went on to quote *Federal Practice and Procedure: Criminal*:

> [i]t is doubtful that the second . . . function[, the double jeopardy protection,] add[s] anything not implicit in the notice requirement of the first function. If a defendant claims prior jeopardy in defense to a pending charge, the court is free to review the entire record of the first proceeding, not just the pleading, and so the need for the indictment to serve this role is limited.

*Id.* (alterations in *Lente*) (quoting 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure: Criminal*, § 125, at 543-44 (2008).

¶18        The *Lente* court, applying a similar approach as in *Jones*, then looked to the sufficiency of the evidence, noting that unlike adults, children cannot easily link experiences to dates or other specific points in time. *Id.* ¶ 56; *Jones*, 792 P.2d at 654-56. And "when sexual abuse is repeated and frequent, isolating any particular instance of abuse becomes a significant challenge for child victims." *Lente*, 453 P.3d 416, ¶ 57. Even "a mature victim might understandably be hard pressed to separate particular incidents of repetitive" abuse. *Id.* (quoting *Jones*, 792 P.2d at 648). The court went on to question how appellate courts could "resolve the tension

between the rights of an alleged victim and the [double jeopardy] rights of an alleged child molester." *See id.* ¶¶ 60, 84 (quoting *R.A.S. v. State*, 718 So. 2d 117, 119 (Ala. 1998)). The court answered this by noting that the "true issue" in repetitive molestation cases is credibility, and that if the jury "believe[s] the child victim's testimony that he or she was subjected to multiple acts of sexual abuse over a long period of time, the prosecution will have necessarily 'proven beyond a reasonable doubt that the defendant committed a specific act.'" *Id.* ¶ 65-66 (quoting *Jones*, 792 P.2d at 659). Thus, if a child has sufficiently described the type and general number of proscribed acts, and a general time period in which they occurred, the evidence is sufficient and eliminates double jeopardy concerns. *Id.* ¶¶ 68-70, 84.

¶**19**          This appears to be a majority view among courts that have considered similar due process questions, and one that we believe strikes an appropriate and just balance.[6] Here, each count of the indictment was

---

[6]*See, e.g., Jones*, 792 P.2d at 655-56, 659 (due process satisfied if child's testimony sufficiently describes kind of acts committed, number of acts committed, and general time period); *R.L.G., Jr. v. State*, 712 So. 2d 348, 362-64 (Ala. Crim. App. 1997) (due process a "flexible concept" accommodating "competing interests" allowing prosecution of resident child molesters based on generic testimony (quoting *State v. Brown*, 780 P.2d 880, 885-86 (Wash. Ct. App. 1989)); *State v. Cozza*, 858 P.2d 270, 274 (Wash. Ct. App. 1993) (due process not violated when resident molestation victim cannot recall specific dates); *Baker v. State*, 948 N.E.2d 1169, 1171-72, 1179 (Ind. 2011) (affirming molestation convictions despite generic testimony because trial turned on credibility); *State v. Reynolds*, 193 A.3d 168, ¶ 20 (Me. 2018) (specific evidence of particular incidents of sexual abuse not required to support guilty verdicts for multiple sexual crimes); *State v. Swan*, 753 N.W.2d 418, ¶ 12 (S.D. 2008) (specific date not essential element of sexual offenses against child; courts lenient as to dates in such cases unless defendant shows he was deprived of defense); *Rankin*, 181 N.W.2d at 171-73 (no denial of adequate defense or double jeopardy protections although child could not specify date of incest and state did not identify specific "carnal knowledge" event among several on which it relied for conviction); *State v. Mitchell*, 34 N.W.2d 661, 661-62 (Wis. 1948) (affirming convictions despite fourteen-year-old victim's inability to recall the dates and exact locations of sex crimes; evidence sufficient for jury to conclude victim was credible and offenses occurred); *Brodit v. Cambra*, 350 F.3d 985, 988-89 (9th Cir. 2003) (rejecting argument in habeas petition that convictions for sex

at least minimally differentiated from the others, such that Copeland was indicted for the first fifty times he molested R.H. in Sierra Vista within the specified time period, and within the statute of limitations. *See id.* ¶¶ 43, 49. Additionally, Copeland's argument is highly speculative and ignores that the entire record of the trial would be available to raise a double jeopardy challenge in the unlikely event that the state would seek to prosecute him later for similar offenses occurring in the same time frame. *See State v. Bruce*, 125 Ariz. 421, 423-24 (1980); *see also Lente*, 453 P.3d 416, ¶ 35. Given the nature of the charges and the generic testimony supporting them, a situation attributable to the victim's young age, Copeland's continuous access to her, and the alleged frequency of his repeated acts, we conclude the indictment was sufficient for purposes of double jeopardy. *Cf. Berry*, 101 Ariz. at 314 (rejecting claim of fatal variance between information and victim's testimony, otherwise "it would . . . behoove one who chooses to sexually assault children . . . to make sure that the child is sufficiently young to be incapable of effectively testifying as to specific dates in the year and minutes on the clock"); *see also Lente*, 453 P.3d 416, ¶ 77 (circumstance of repeated abuse and victim's generic recollection should not be transformed into "a shield" from prosecution).

**Continuous Sexual Abuse**

**¶20**        Copeland lastly contends that because of the lack of specificity regarding the timing and location of the offenses, the trial should have been limited to the continuous sexual abuse charge. He did not raise this issue below, and our review is therefore limited to fundamental error. *See State v. Escalante*, 245 Ariz. 135, ¶ 12 (2018). Copeland, however, has failed to argue fundamental error or establish the first step: to demonstrate that error occurred. *See id.* ¶ 21; *State v. Starks*, 251 Ariz. 383, ¶ 6 (App. 2021) (concluding appellant waived all review of issue by failing to meaningfully argue fundamental error). As outlined above, the trial court did not err in denying Copeland's motion to dismiss the molestation charges. Moreover, he was not entitled to a trial for the crime he preferred to be charged with where the evidence could support multiple other offenses. *See Brown*, No. 2 CA-CR 2018-0207, ¶¶ 15-18 (state has discretion to charge sexual offenses individually or as continuous sexual abuse);[7] *People v. Johnson*, 46 Cal. Rptr.

_____

crimes where charging document did not specify precise dates violated due process).

          [7] Again, cited only for persuasive value absent other on-point Arizona authority. *See* Ariz. R. Sup. Ct. 111(c)(1)(C).

2d 838, 839-40 (Ct. App. 1995) (rejecting argument state was required to charge continuous sexual abuse rather than numerous individual offenses, even when evidence was only "generic testimony"). The prosecution, not the court or the defendant, determines whether to file criminal charges and which charges to file. A.R.S. § 11-532(A); *State v. Hankins*, 141 Ariz. 217, 221 (1984). Nor does the language of the statute, which enacted continuous sexual abuse as a crime, indicate any legislative intent to modify the prosecution's traditional discretion in choosing how to structure charges against an individual defendant. *See* A.R.S. § 13-1417. Copeland has demonstrated no error or abuse of discretion in the court's denial of his motion to dismiss. *See Ramsey*, 211 Ariz. 529, ¶ 5.

## Admission of Evidence

**¶21**        Copeland next challenges the trial court's rulings on several evidentiary issues. We review such rulings for an abuse of discretion. *See State v. Pina-Barajas*, 244 Ariz. 106, ¶ 4 (App. 2018). This includes "evidentiary rulings involving hearsay and related exceptions." *State v. Giannotta*, 248 Ariz. 82, ¶ 8 (App. 2019).

### Victim's Statements to School Officials

**¶22**        Copeland first argues the trial court erred by admitting inadmissible, highly prejudicial hearsay over his objections. Specifically, the court allowed both R.H.'s PE teacher and school counselor to testify in the state's case-in-chief that R.H. had told them Copeland touched her inappropriately.

**¶23**        Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement," Ariz. R. Evid. 801(c), and is inadmissible unless it falls within one or more recognized exceptions, Ariz. R. Evid. 802. The state initially argued the testimony at issue was not hearsay because it was offered to show its effect on the listeners, specifically why the school officials contacted law enforcement. It maintained the testimony was offered to "explain the reasons that the employees contacted police despite [R.H.'s] reluctance and preference that they not do so."[8] At

---

[8] Below, the state also argued that R.H.'s extrajudicial statements were admissible as evidence of her mental state. *See* Ariz. R. Evid. 803(3). The state wisely abandoned this argument on appeal. *See State v. Fulminante*, 193 Ariz. 485, ¶ 37 (1999) (declarant's statement about conduct of another person not admissible under Rule 803(3) state-of-mind hearsay exception).

oral argument in this court, however, the state decided "not to dispute" that the testimony at issue was hearsay, only maintaining any error was harmless. Again, because the state's apparent concession on legal issues is not binding, *see Solis*, 236 Ariz. 242, ¶ 23, and because the hearsay error is dispositive in our reversal and remand of Copeland's convictions, we address both issues on their merits.

**¶24** Extrajudicial statements presented for the purpose of explaining a hearer's conduct may be "admissible where offered to show their effect on one whose conduct is in issue," and if they are not being offered to prove the matter asserted in the statement. *State v. Rivera*, 139 Ariz. 409, 413-14 (1984). In *Rivera*, our supreme court held that a child molestation victim's extrajudicial statement to her mother, in which she had conveyed being touched in her pubic area, was inadmissible despite the theory that it "complete[d] the prosecution's story showing what prompted the mother to take her daughter[] to the hospital." *Id.* at 410, 414. The court concluded that neither the mother's nor the victim's conduct was at issue and "[t]he reason the mother took her daughter to the hospital [wa]s not relevant to the legal issues of the molestation charge." *Id.*

**¶25** Similarly, in this case, the school employees' duty to report evidence of a student's molestation was never in question, nor was their testimony used by the state to explain R.H.'s motivation. Thus, the hearsay in the context of this case had "no relevant use other than to prove the truth of the matter asserted." *Id.* at 414. Indeed, the manner in which the state presented the testimony, not only as the leading evidence for its case-in-chief but in its opening statement and closing arguments, demonstrates that it relied on the hearsay to prove the substance of the allegations. In her opening statement, the prosecutor informed the jury that the PE teacher would testify R.H. "broke down into inconsolable sobbing" and said Copeland had "been touching her private parts." The prosecutor continued that R.H. was then taken to the school counselor, who would testify that a "sobbing" R.H. said Copeland had touched her "in the way a man who loves a woman touches her." Similarly, during closing argument, the prosecutor exhorted the jury that:

> [R.H.] is your witness. She told you that [Copeland] loves her like a girlfriend or the way a man loves a woman. And she said loves her like a girlfriend. Well, remember [the] school counselor . . . remembered [R.H.] describing it as the way a man loves a woman? Kind of

corroborating that [R.H.] consistently reports it
in that manner.

*See Rivera*, 139 Ariz. at 410, 414 (statement in question was "a simple assertion of appellant's conduct," with "no relevant use other than to prove the truth of the matter asserted and is therefore hearsay").

¶26 Because Copeland moved to preclude the testimony at issue, we review its erroneous admission for harmless error. *See State v. Briggs*, 112 Ariz. 379, 382 (1975) (motion to preclude preserves issue for appeal); *State v. Wood*, 180 Ariz. 53, 63 (1994) (erroneously admitted testimony reviewed for harmless error). Under harmless error review, the state has the burden of demonstrating beyond a reasonable doubt that the error had no influence on the jury's judgment. *Wood*, 180 Ariz. at 63; *State v. Bible*, 175 Ariz. 549, 588 (1993). Whether an error is harmless is a fact-specific inquiry which must be evaluated in light of the totality of properly admitted evidence. *State v. Fulminante*, 193 Ariz. 485, ¶ 50 (1999); *State v. Poyson*, 198 Ariz. 70, ¶ 21 (2000). In order for error to be harmless, we must be firmly convinced that "the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *See Bible*, 175 Ariz. at 588 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)).

¶27 A trial court's erroneous admission of evidence, including hearsay, can be harmless under some circumstances, including when it is "entirely cumulative," *State v. Williams*, 133 Ariz. 220, 226 (1982), or when there is "overwhelming" properly admitted evidence of a defendant's guilt, *State v. Davolt*, 207 Ariz. 191, ¶ 64 (2004) (erroneous admission of photographs and videotape harmless when other evidence of guilt "overwhelming"); *see also State v. Romero*, 240 Ariz. 503, ¶ 8 (App. 2016) (listing variety of factors "frequently considered by courts" in determining harmless error). Erroneously admitted evidence is cumulative not simply when "other evidence exists to support a conviction," but when it "supports a fact otherwise established by existing evidence," meaning that it was "superfluous and could not have affected the verdict." *State v. Bass*, 198 Ariz. 571, ¶ 40 (2000). Stated differently, errors are harmless when the untainted evidence "present[s] . . . a body of proof, firmly convincing on the essential facts, that the jury would have convicted even without the error." *Id.* ¶ 45.

¶28 But erroneously admitted evidence is less likely to be harmless if it is admitted without a limiting instruction, *see Fulminante*, 193 Ariz. 485, ¶ 50, if it is presented repeatedly, *see Williams*, 133 Ariz. at 227, if it is argued in closing, *see State v. Charo*, 156 Ariz. 561, 563 (1988), if it

identifies the defendant as the perpetrator, *cf. State v. Wilson*, 113 Ariz. 363, 366 (1976) (reasoning erroneously admitted hearsay was harmless, in part because it did not identify the defendant as the perpetrator), and when it goes directly to a critical issue, *see Bass*, 198 Ariz. 571, ¶ 46. Each of those factors is applicable here.

¶29 When credibility is "the central issue" because of scant physical evidence or a dearth of corroborating eyewitnesses, the repeated admission of inadmissible hearsay can be highly prejudicial. *State v. Thompson*, 167 Ariz. 230, 235 (App. 1990); *State v. Thompson*, 169 Ariz. 471, 476 (App. 1991); *see also State v. Taylor*, 196 Ariz. 584, ¶ 15 (App. 1999); *State v. Martin*, 135 Ariz. 552, 555 (1983) (a "parade of corroborating witnesses" repeating inadmissible hearsay bolstering a victim's credibility may be prejudicial). The initial hearsay was reinforced by repetition here, and Copeland argues the "error cannot be viewed as harmless" because the state used it to bolster R.H.'s credibility at the outset, previewing the hearsay in its opening statement, and emphasizing it in closing arguments. *See Charo*, 156 Ariz. at 563 (state's use of inadmissible hearsay in closing argument weighs in favor of finding reversible error); *Fulminante*, 193 Ariz. 485, ¶ 50 (use of evidence in closing argument belies the assertion that it was relatively unimportant).

¶30 The state responds that any error was harmless because the testimony at issue was cumulative of other evidence, including testimony from R.H., a former police detective, and the forensic interviewer.[9] The state also points out that Copeland had the opportunity to "extensively and effectively cross-examine, confront, and impeach" R.H. The state thus maintains that its use of the hearsay to bolster the victim's credibility "is of no moment given that the same information was admitted through two other witnesses, . . . [a]nd numerous witnesses testified that R[.H.] was truthful and did not lie."

¶31 We cannot conclude that the hearsay testimony of the teacher and the counselor, particularly given its primacy in the state's presentation of the evidence, was harmless here. At trial, the state acknowledged to the

---

[9]The state's suggestion that substantially similar hearsay testimony was subsequently introduced "without objection" by Copeland is not supported by the record. Copeland repeatedly objected, and made a "continuing objection," when the state elicited hearsay testimony from the forensic interviewer that R.H. had told her Copeland touched R.H.'s "private places," and touched her in Georgia and Sierra Vista.

jury that "this case is very much about credibility." And the inadmissible hearsay was repeatedly used to both bolster the substance of R.H.'s allegations and identify Copeland as the perpetrator.[10] *See Thompson*, 169 Ariz. at 476 (defendant prejudiced where "credibility was the central issue" and court could not say "corroborating witnesses had no influence on the jury's deliberations." (quoting *Martin*, 135 Ariz. at 555)). R.H.'s credibility was crucial because the evidence against Copeland was not "overwhelming." *See Davolt*, 207 Ariz. 191, ¶ 64 (error may be harmless by virtue of overwhelming properly admitted evidence of guilt). There was no physical evidence, there was no eyewitness testimony corroborating R.H.'s allegations, and all of Copeland's recorded admissions were equivocal. While such evidence is not required for the state to meet its burden of proof, *see State v. Jerousek*, 121 Ariz. 420, 427 (1979) ("In child molestation cases, the defendant can be convicted on the uncorroborated testimony of the victim."), its absence here is a factor in our determination that the error was not harmless in light of the properly admitted evidence, *see Romero*, 240 Ariz. 503, ¶ 9.

¶32        Further, the trial court did not provide a limiting instruction to the jury, despite the hearsay being referenced by the state in its opening statement and closing arguments. *See Fulminante*, 193 Ariz. 485, ¶ 50 ("Because the testimony was admitted without a limiting instruction, we must assume the jury could have considered the statements as asserting the truth of the matter testified to . . . ."). And finally, although not dispositive, and indicative of the view of only one participant in the proceeding, we find notable the court's statement about this testimony at sentencing:

> Of the days of testimony that were the most compelling, it was the testimony of the school officials who first received the report from the child of the events that had taken place in her home perpetrated on her by her father. The testimony of the teacher and the school counselor, together with the testimony of the child herself, were the most compelling testimony that was heard in this trial. It brought home to everyone, the jury and everyone sitting

---

[10]Both the PE teacher and school counselor testified that R.H. had identified her "stepdad" as the person who touched her inappropriately, and the school counselor identified R.H.'s stepdad as "Mr. Copeland."

in the courtroom, the profound effect that these
acts have had on this child.

This statement of the court's perception of the testimony, particularly in conjunction with the other factors considered above, makes it difficult to conclude the improper admission of the hearsay evidence was harmless.

¶33 We note our supreme court's comment in *Rivera*, that "[p]roblems inherent in cases such as this tempt courts, including this one, to stretch the rules of evidence to their utmost." 139 Ariz. at 413 n.1. However, as in *Rivera*, it is not our province to do so. Because the evidence of Copeland's guilt was not overwhelming, and because we cannot say beyond a reasonable doubt that the testimony was immaterial to the jury's evaluation of R.H.'s credibility—the central issue in this case—we vacate Copeland's convictions and remand for a new trial or other proceedings consistent with this opinion. *See Thompson*, 169 Ariz. at 476; *Taylor*, 196 Ariz. 584, ¶ 16; *Martin*, 135 Ariz. at 555.

**Redacted Audio of Copeland's Brother's Police Interview**

¶34 Although we vacate Copeland's convictions as outlined above, we nevertheless address some of his remaining assignments of error that are likely to recur if he is retried. *See Fulminante*, 193 Ariz. 485, ¶ 10 (appellate court may address issues likely to recur upon retrial to promote judicial economy). Copeland contends the trial court erred by admitting a redacted audio recording of his brother J.C.'s interview with law enforcement, which revealed what Copeland had said to him about the allegations. Copeland objected to its admission on the grounds that it was hearsay, irrelevant, and cumulative.[11]

¶35 On appeal, Copeland maintains the recording was inadmissible hearsay because it contained out-of-court statements made by J.C. And he argues it was "not impeachment" evidence because J.C. "was not given the opportunity to describe what he meant."

¶36 A witness's prior extrajudicial statement is not hearsay if: the witness testifies; the out-of-court statement is inconsistent with the

---

[11]Copeland has abandoned his arguments that the evidence was cumulative and irrelevant. *See Vargas*, 249 Ariz. 186, ¶ 22 (failure to properly develop argument constitutes abandonment and waiver). Thus, we address only his contention that the recording contained inadmissible hearsay.

witness's testimony; and the witness is subject to cross-examination about the prior statement. Ariz. R. Evid. 801(d)(1)(A). "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it . . . ." Ariz. R. Evid. 613(b).

**¶37**       At trial, J.C. testified on redirect examination by the state that Copeland had "simply told [him] that he believed he didn't do it." After the prosecutor refreshed his recollection with a transcript, J.C. acknowledged that Copeland had said: "[I]f I did do it, then, yeah, I deserve to go away." The audio recording of the interview, which was admitted days after J.C. testified and to which Copeland objects, reflects J.C. telling a detective that Copeland had said: "Did I really do something? If I did, boom, then you know what? I deserve to go away." The recording thus contained a prior inconsistent statement used to impeach J.C., and Copeland had the opportunity to cross-examine him about it because the substance of the statement had been elicited by the state during J.C.'s testimony. It therefore met the criteria of Rules 801(d)(1)(A) and 613(b), Ariz. R. Evid.

**¶38**       Copeland, however, cites *State v. Joe* and argues the admission of the recording was improper because J.C. was no longer present to elaborate upon any discrepancies between his testimony and his prior statements. 234 Ariz. 26, ¶ 12 (App. 2014). Copeland's reliance on *Joe* is unpersuasive. First, the sole issue in *Joe* was whether a declarant-witness's prior statements were in fact inconsistent with her testimony at trial, an argument Copeland has not made. *See id.* ¶ 13. Moreover, the language Copeland quotes from *Joe* only generally describes the rationale underlying Rule 801(d)(1)(A) and does not prohibit the introduction of a prior inconsistent statement after a declarant-witness has testified, when that witness has had the opportunity to explain the inconsistency as required by Rules 801(d)(1)(A) and 613(b). *See Joe*, 234 Ariz. 26, ¶ 12. Finally, Copeland was not precluded from recalling J.C. to "describe what he meant." We thus cannot say the trial court abused its discretion in admitting the recording of the interview.[12]

---

[12]Copeland also contends, for the first time on appeal, the manner in which the audio recording was redacted "clearly misled the jury" and prejudiced him, citing Rule 403, Ariz. R. Evid. Because Copeland did not raise this issue below, it is subject to review only for fundamental error. *See Escalante*, 245 Ariz. 135, ¶ 12. However, because if retried he can raise this

**Body Camera Videos**

¶39     Copeland next contends the trial court abused its discretion by admitting, over his objections, clips of body camera video taken by police when they responded to his home after he made a suicide threat. The state explained it had edited the hours of bodycam footage into shorter clips "to decrease the playing time in front of the jury, [and] decrease the potential claims of prejudice for the defendant," but noted it was amenable to offering longer video clips "if [Copeland] want[ed] more context."

¶40     Copeland responded that his

> immediate concern with the . . . clips, as . . . edited, is that they present an incomplete version of the comments that Mr. Copeland may have made when the police came to his residence that evening. And my concern is that that incompleteness will result in . . . a misperception on the jury's part of what Mr. Copeland said, in the sense that if all they hear is silence and something along the lines of I did it, and silence, then they're left to speculate as to what came before. . . . His mouth is moving. Words are coming out, but we're not — the jury's not hearing those words. . . . If the state is going to put on evidence of Mr. Copeland's statement, then I believe that those statements or that evidence has to be complete so that the jury has an accurate understanding of what Mr. Copeland said under the circumstances.

The trial court permitted the state to introduce the edited footage over Copeland's objections, stating that Copeland could provide any necessary context through cross examination.

¶41     Copeland acknowledges on appeal that "[t]here was no dispute amongst the parties" that some edits were required to eliminate references to precluded evidence. But he maintains that the footage was edited in a manner that omitted necessary context and that the trial court

---

objection and allow the trial court to rule on it in the first instance, as we note for his additional claims of unobjected-to fundamental error, *see infra* n.15, we do not address this issue further.

abused its discretion by admitting it. He asserts that because there is a portion of the videos in which Copeland is speaking but there is no sound, "the jury could only speculate about what he was saying" and that the state edited out Copeland's "vehement denials that he committed these crimes." He thus contends the footage lacked necessary context and was admitted in violation of Rule 106, Ariz. R. Evid.

¶42 We first note that the jury was instructed not to speculate and to determine the facts only from the evidence produced in court, and we presume the jury followed the trial court's instructions. *See State v. Newell*, 212 Ariz. 389, ¶ 68 (2006). Furthermore, Rule 106 provides, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." The rule is one of "inclusion rather than exclusion," and it does not "direct the exclusion of evidence in any circumstance." *State v. Steinle*, 239 Ariz. 415, ¶ 10 (2016). Thus, a court does not abuse its discretion under Rule 106 by admitting evidence, only by excluding specific evidence offered by a party that is necessary to provide context. *See id.* Notably, Copeland could have identified and sought to admit additional portions of body camera footage to provide the context he contends was necessary under Rule 106, but he never made such an offer, even after the court directly asked him whether there were "some other clips that [he] would prefer to have in." We conclude the trial court did not err.

### Prosecutorial Error[13]

¶43 We lastly address Copeland's contention that he suffered fundamental error and prejudice arising from several instances of prosecutorial error to which he did not object below. Specifically, he claims the state failed to correct misleading testimony, mischaracterized evidence, referred to expressly precluded evidence,[14] and deceptively edited audio

---

[13] Although Copeland alleges "prosecutorial misconduct," we "differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation." *In re Martinez*, 248 Ariz. 458, ¶ 47 (2020).

[14] Copeland points out that the state repeatedly alluded to an order of protection specifically precluded by the trial court. While we do not condone the prosecutor's apparent violations of the court's order, we do not address this issue as one that is unlikely to recur at any retrial.

and video exhibits. We need not resolve these issues here, however, because if retried, Copeland will have the opportunity to enter his objections should these issues arise again, permitting the trial court to address them in context and in the first instance. *See Wood*, 180 Ariz. at 72.[15]

**Disposition**

**¶44**         Based on the foregoing, we uphold the trial court's denial of Copeland's motion to dismiss the indictment, but the admission of prejudicial hearsay and its use by the state requires that his convictions and resulting sentences be vacated, and we remand for a new trial or other proceedings consistent with this opinion.

---

[15]Copeland also challenges as fundamental error the trial court's imposition of fifty assessments pursuant to A.R.S. § 12-116.07, one for each of his convictions. Because we vacate his convictions and resulting sentences, and as noted above, because he can raise this objection to the trial court if he is so sentenced again, we do not address the issue for the first time here. *See State v. Prince*, 206 Ariz. 24, ¶ 4 (2003) (sentencing issues may become moot when sentence is vacated).